77 Cal.Rptr.2d 262 (1998)
65 Cal.App.4th 1115
L. DAMIAN, Plaintiff and Respondent,
v.
Romana D. TAMONDONG, Defendant and Appellant.
No. A076754.
Court of Appeal, First District, Division Three.
July 29, 1998.
As Modified on Denial of Rehearing July 27, 1998.
Review Denied October 14, 1998.
*263 Andrew J. Ogilvie, San Francisco, for Defendant and Appellant.
Eskanos & Adler, Barry Adler, Crosby, Heafey, Roach & May, John J. Horton and Kathy M. Banke, Oakland, for Plaintiff and Respondent.
PHELAN, Presiding Justice.

I. INTRODUCTION
Pursuant to rule 63 of the California Rules of Court, this case was certified by the Appellate Department of the San Francisco Superior Court for our review. It presents an issue of first impression: Whether the defendant in a deficiency action brought under the Rees-Levering Automobile Sales Finance Act (Civ.Code, § 2981 et seq.) (hereinafter, the Rees-Levering Act or the Act)[1] can be the "prevailing party" for purposes of awarding attorney fees pursuant to section 2983.4[2] where, prior to trial, the plaintiff has voluntarily dismissed the underlying contract-based action without prejudice.
Because neither the Rees-Levering Act nor section 2983.4 defines the term "prevailing party," respondent L. Damian urges us to look to section 1717, subdivision (b)(2) which provides that there is "no prevailing party for purposes of [section 1717]" where an action has been voluntarily dismissed and, on that basis, affirm the order of the municipal court denying appellant Romana Tamondong's request for attorney fees.[3] In a supplemental letter brief, Damian further contends that our Supreme Court's recent decision in Santisas v. Goodin (1998) 17 Cal.4th 599, 71 Cal.Rptr.2d 830, 951 P.2d 399 (Santisas) compels such a result.
Tamondong claims she is a "defendant in whose favor a dismissal [was] entered" within the meaning of Code of Civil Procedure section 1032, subdivision (a)(4), and is, thus, a "prevailing party" entitled to an award of attorney fees "as a matter of right" (id., subd. (b)), and as an element of her "costs" (id., § 1033.5, subd. (a)(10)(B)). In her supplemental letter brief, Tamondong contends that Santisas has no bearing on this case because the source of her right to recover attorney fees is not a contract, but rather a fee-shifting statute, i.e., section 2983.4.
Relying on Heather Farms Homeowners Assn. v. Robinson (1994) 21 Cal.App.4th 1568, 26 Cal.Rptr.2d 758 (Heather Farms) and its reading of the legislative history of section 2983.4, the appellate department rejected both parties' arguments[4] and held instead, without elaboration, that the determination of the "prevailing party" issue under a fee-shifting statute such as section 2983.4 must be resolved using a "pragmatic approach," i.e., a determination of "which party had prevailed on a practical level." (Heather Farms, supra, at p. 1574, 26 Cal. Rptr.2d 758.) The appellate department was concerned, inter alia, with the "potential *264 for abuse" by defendant dealers to which the Rees-Levering Act attorney fees provision was originally addressed, that is, the "`... practice of fighting all cases brought against them ... as a matter of principle, to serve notice on attorneys who handle such cases on behalf of buyers that they will, regardless of the merits of the case, be involved in lengthy, expensive, time-consuming litigation....'" Apparently, the appellate department believed that, unless a fee award is available following a pretrial dismissal, dealers "could effectively thwart section 2983.4 by pursuing lengthy, expensive and meritless litigation up until the date of trial, then dismiss the action with no risk of adverse financial consequences."
We agree with the appellate department that section 1717(b)(2) does not bar a statutory award of attorney fees under section 2983.4 for a defendant in whose favor a dismissal has been entered in an action on a contract subject to the Rees-Levering Act, and that the trial court's interpretation of section 2983.4 would undermine the Legislature's purpose in enacting a bilateral attorney fees provision for Rees-Levering Act cases. Accordingly, we affirm the judgment of the appellate department and remand for a determination on the merits of Tamondong's fee petition.

II. Factual and Procedural Background
The underlying facts of this case are straightforward and undisputed. In May 1994, Tamondong purchased a car from Melody Toyota pursuant to a "Re-Computed (Add-On) Interest Motor Vehicle Contract and Security Agreement" (the sales contract). Although Damian admits the sales contract was subject to the Rees-Levering Act, it contained a one-sided attorney fees clause, authorizing an award of fees only for the seller (or its assignees) in the case of default. Specifically, in a paragraph entitled "Default," the sales contract provided: "You agree that upon your default we shall be entitled to recover from you our reasonable collection costs, including, but not limited to, an attorney's fee...."
Damian, acting as the "nominee" of Bank of America, the lender to which Melody Toyota assigned its rights under the sales contract, filed a complaint in municipal court to collect a deficiency judgment after the bank repossessed and resold the vehicle. Tamondong retained an attorney, who spent approximately 54 hours actively defending the deficiency action. Damian voluntarily dismissed the action pursuant to Code of Civil Procedure section 581, subdivision (b), literally on the eve of trial. Tamondong's objections to the dismissal were overruled, and she does not challenge that ruling on appeal.
Following dismissal, Tamondong filed a motion for an, award of attorney fees and costs pursuant to section 2983.4, and subdivisions (a)(10)(B) .and (c)(5) of section 1033.5 of the Code of Civil Procedure. Damian raised no specific objection to Tamondong's request for non-attorney fee costs, but opposed her motion on the ground that section 1717(b)(2) precludes an award of attorney fees where there has been a voluntary dismissal. The trial court agreed with Damian and denied Tamondong's motion in its entirety. Tamondong appealed to the appellate department of the superior court. The appellate department vacated the trial court's order, and remanded for a determination, using a "pragmatic approach" based on "an analysis of the relevant facts at the trial level," whether Tamondong was the "prevailing party" in the action.

III. Discussion

A. Standard of Review.

This case involves the application of various statutes to undisputed facts which, the parties agree, calls for independent review. (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699, 170 Cal.Rptr. 817, 621 P.2d 856; Tobin v. Oris (1992) 3 Cal.App.4th 814, 825, 4 Cal.Rptr.2d 736.)

B. Section 1717(b)(2) Does Not Bar a Fee Award Where the Prevailing Party'8 Right to Recover Fees Arises Under a Fee-Shifting Statute.

Damian provides excerpts from the legislative history of the Unruh Act (§ 1801 et *265 seq.), the Rees-Levering Act, and section 1717, in support of a claim that the attorney fees provisions of these statutes was intended to correct a long-standing problem for consumers in California: a lack of reciprocity in attorney fees provisions in consumer credit agreements. On this basis, Damian contends that we must construe the term "prevailing party" as having the same definition in each of these statutes. More accurately, Damian urges us to import the definition found in section 1717(b)(2) into section 2983.4, and find that Tamondong cannot, as a matter of law, be the prevailing party after dismissal of this Rees-Levering Act case. We reject this argument.
In 1959, as part of the Unruh Act, the Legislature enacted section 1811.1 which provides, in relevant part: "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract or installment account subject to the provisions of [the Unruh Act] regardless of whether such action is instituted by the seller, holder or buyer." (Stats.1959, ch. 201, § 1, p. 2105, eff. Jan. 1,1960.)
The Legislature next enacted the Rees-Levering Act, which extended many of the consumer protection provisions of the Unruh Act to agreements for motor vehicle sales and financing. (See 10 UCLA L.Rev. (1962) 125, 126.) One such provision was codified as section 2983.4, which provides, in relevant part: "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract or purchase order subject to [the Rees-Levering Act] regardless of whether such action is instituted by the seller, holder or buyer." (Stats. 1961, ch. 1626, § 4, p. 3539, eff. Jan. 1, 1962.) This provision was designed to rectify the universal practice of including in standard form conditional sales contracts a provision for an award of attorney fees and court costs to a seller who sued a buyer to enforce its rights under the contract, but failing to provide a corresponding right for buyers when they successfully brought or defended an action under the contract. (10 UCLA L.Rev., supra, at pp. 153-154; 15 Assem. Interim Com. Rep. No. 24, Interim Com. on Finance and Insurance, Rep. on Automobile Financing (Dec. 1960) pp. 29-30 (hereinafter, Final Report).) Such one-sided attorney fees provisions, coupled with other oppressive litigation tactics by dealers, had made it difficult or impossible for consumers with good defenses to find attorneys willing to represent them in prosecuting or defending litigation arising from automobile purchases. (Final Report, supra, at pp. 29-31.) Apparently, the Legislature decided the best way to address this problem was to give buyers "an effective means of self-help through the legal process," including a statute authorizing an award of attorney fees to consumers who prevailed in an action on the sales contract. (Final Report, supra, at p. 31.)
Finally, in 1968, the Legislature enacted section 1717 (Stats.1968, ch. 266, § 1, p. 578), which was a more general reciprocity statute designed "`... to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions. [Citation.]'" (Hsu v. Abbara (1995) 9 Cal.4th 863, 870, 39 Cal.Rptr.2d 824, 891 P.2d 804, quoting Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124, 128, 158 Cal.Rptr. 1, 599 P.2d 83.)
We have no doubt, as our colleagues in Division Four recently noted, that sections 1811.1, 2983.4, and 1717 are "similarly worded statutes which are recognized as being `part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail.' [Citations.]" (Milman v. Shukhat (1994) 22 Cal.App.4th 538, 543, 27 Cal.Rptr.2d 526, quoting Coast Bank v. Holmes (1971) 19 Cal.App.3d 581, 597, fn. 3, 97 Cal.Rptr. 30, citing § 1811.1 [Installment Sales Contracts]; § 2983.4 [Conditional Sales Contracts]; § 1794.1 [Sale Warranties Of Consumer Goods]; § 1812.94 [Health Studio Contracts]; former § 1732 [Swimming Pool Construction Contracts]; see also Joseph Magnin Co. v. Schmidt (1978) 152 Cal.Rptr. 523, 89 Cal.App.3d Supp. 7,10 [section 1811.1 was designed to encourage attorneys to accept *266 cases when the buyer has a good defense].) However, as we will explain, Damian focuses too heavily upon the similarities and ignores a fundamental difference between sections 2983.4 and 1717, the only two of these statutes truly at issue in this case.
Damian's analysis of the early legislative history of these statutes is also flawed. Damian ascribes great significance to the Legislature's failure to adopt languagewhich was included as part of section 1717 when it was first proposed as Assembly Bill No. 563 in 1968, and would have been added by the same bill as an amendment to sections 1811.1 and 2983.4defining the term "prevailing party" as "including a defendant as to whom the action is dismissed." (See Assem. Bill No. 563 (1968 Reg. Sess.) Feb. 14, 1968.)[5] Nothing in the legislative history provided by Damian explains either why this language was originally proposed or why it was dropped. Nevertheless, Damian contends it would be error for us to infer that the Legislature did indirectly (i.e., defined "prevailing party" for purposes of section 1811.1 and 2983.4 as "including a defendant as to whom the action is dismissed") what it declined to do directly. We disagree.
When it enacted sections 1811.1 and 2983.4, the Legislature was undoubtedly aware of existing statutes which already provided an award of costs to a prevailing defendant, including one "as to whom the action is dismissed,"[6] and case law which had long recognized that attorney fees awarded pursuant to statute were recoverable as "costs" of suit (Woodward v. Bruner (1951) 104 Cal.App.2d 83, 85, 230 P.2d 861; City Investment Co. v. Pringle (1920) 49 Cal.App. 353, 355,193 P. 504),[7] such that it was unnecessary to so define the term "prevailing party" for the new attorney fees statutes. Moreover, when it had the opportunity in 1968 to define the term "prevailing party" so as to make it uniform for sections 1811.1, 2983.4, and 1717, it declined to do so. Instead, it specifically limited the term "prevailing party" "as used in" section 1717 to mean "the party in whose favor final judgment is rendered" (Stats.1968, ch. 266, § 1, p. 578), left the term undefined as to sections 1811.1 and 2983.4, and gave no indication that the limitation enacted for section 1717 was to apply to section 1811.1 and 2983.4. The Legislature also considered, but rejected, the possibility of achieving uniformity among these three statutes by enacting a statutory fee-shifting provision that would have mandated *267 an award of attorney fees to the "prevailing party" in any action on any contract a complete reversal[8] of the so-called "`American Rule'" (see Santisas, supra, 17 Cal.4th at p. 607, fn. 4, 71 Cal.Rptr.2d 830, 951 P.2d 399; City and County of San Francisco v. Sweet (1995) 12 Cal.4th 105, 115 & fn. 7. 48 Cal.Rptr.2d 42, 906 P.2d 1196; Trope v. Katz (1995) 11 Cal.4th 274, 278-279, 45 Cal. Rptr.2d 241, 902 P.2d 259; Sears v. Baccaglio (1998) 60 Cal.App.4th 1136, 1143-1144, 70 Cal.Rptr.2d 769 (Sears)) for all contract actions. But again, it declined to do so. The net result of this early legislative history, to the extent it is coherent, suggests that the Legislature intended to reverse the "American Rule" by statute as to specific types of contractsincluding those subject to the Unruh and Rees-Levering Actsbut only to accomplish reciprocity as to other types of contracts in which the parties agreed to a fee-shifting provision. (See Sears, supra, 60 Cal.App.4th at pp. 1143-1144, 70 Cal.Rptr.2d 769.)
Of course, section 1717 was amended in 1981, in part to codify the holding of International Industries, Inc. v. Olen (1978) 21 Cal.3d 218, 145 Cal.Rptr. 691, 577 P.2d 1031 (Olen), wherein our Supreme Court held based on considerations of equity and public policythat there can be no "prevailing party" in an action subject to section 1717 where the plaintiff has voluntarily dismissed an action on a contract. (Santisas, supra, 17 Cal.4th at p. 616, 71 Cal.Rptr.2d 830, 951 P.2d 399; Hsu v. Abbara, supra, 9 Cal.4th at p. 873, 39 Cal.Rptr.2d 824, 891 P.2d 804.) At that time, the Legislature added subdivision (b) to section 1717, as follows: "(b)(1) The court, upon notice and motion by a party, shall determine who is the prevailing party, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the prevailing party shall be the party who is entitled to recover costs of suit, [¶] (2) Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section. [¶] Where the defendant alleges in his or her answer that he or she tendered to the plaintiff the full amount to which he or she was entitled, and thereupon deposits in court, for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a prevailing party within the meaning of this section." (Stats. 1981, ch. 888, § 1, p. 3399, eff. Sept. 28, 1981.)[9]
Damian appears to suggest that, by enacting subdivision (b) of section 1717, the Legislature intended to limit the definition of the "prevailing party" in all voluntarily dismissed contract actions, including those subject to the Unruh Act or Rees-Levering Act. This argument finds no support in the legislative history of the 1981 amendments to section 1717. On the contrary, section 1717(b)(2) was specifically formulated to limit the definition of prevailing party "for purposes of this section," by excluding from the range of possibilities a finding that a defendant in an action subject to that section could be found to have prevailed where the plaintiff voluntarily dismissed the action. On the other hand, the Legislature considered and expressly incorporated into section 1717 some language it had previously included in sections 1811.1 and 2983.4, thereby expanding the class of defendants who could be found to be "prevailing parties" for purposes of section 1717 to those who could plead and prove that they "tendered to the plaintiff the full amount to which he or she was entitled, and thereupon deposit[ed] in court for the plaintiff, *268 the amount so tendered...." But here again, the Legislature declined an opportunity to make uniform the attorney fees provisions of sections 1811.1, 2983.4, and 1717.
Regardless of the foregoing legislative history, there remains a fundamental difference between section 1717, on the one hand, and sections 1811.1 and 2983.4, on the other: The latter are independent statutory sources of attorney fees in contract-based actions, whereas the former gives rise to a right to recover attorney fees only if the contract on which the action is based contains an attorney fees provision. We have no doubt that when the Legislature enacted section 2983.4, it intended to ensure reciprocity when dealers included attorney fees provisions in automobile sales contracts subject to the Rees-Levering Act. But section 2983.4 goes beyond that objective by providing an award of attorney fees to the "prevailing party" in such cases regardless of whether the parties to the action had a prior agreement about allocation of responsibility for fees in the event of a dispute. Nothing in the legislative history on which Damian relies, or in any of the case law, even remotely suggests that the Legislature intended a different outcome on attorney fees for those parties to a Rees-Levering Act who had made no "agreement" on that issue and those who did.[10]
As the appellate department observed, numerous California courts have held that section 1717 does not control upon dismissal of an "action on a contract" where a fee-shifting statute, as opposed to a contract, authorizes an award of attorney fees.[11] (See, e.g., Heather Farms, supra, 21 Cal.App.4th at p. 1572, 26 Cal.Rptr.2d 758.) Thus, attorney fees may be awarded as sanctions under Code of Civil Procedure section 128.5 even after the plaintiff has voluntarily dismissed what was, in essence, a contract action. (West Coast Development v. Reed, supra, 2 Cal.App.4th at p. 706, 3 Cal.Rptr.2d 790.) Similarly, in an action brought under the Consumer Legal Remedies Act (§ 1750 et seq.) and the Song-Beverly Consumer Warranty Act, commonly known as the California "Lemon Law" (§ 1790 et seq.), our colleagues in the Fourth Appellate District have noted that section 1717 does not preclude a fee award to a prevailing plaintiff after pretrial dismissal of an action subject to those statutes and their fee-shifting provisions. (Reveles v. Toyota by the Bay (1997) 57 Cal. App.4th 1139, 1150-1151, 1154, 67 Cal. Rptr.2d 543.) Other courts have rejected attempts to import the section 1717(b)(2) definition of "prevailing party" into other statutes which provide for a fee award on that basis. (Adler v. Vaicius (1993) 21 Cal. App.4th 1770, 1776-1777, 27 Cal.Rptr.2d 32 [award of attorney fees to defendant was proper following voluntary dismissal of civil harassment action brought pursuant to Code of Civil Procedure section 527.6]; Winick Corp. v. Safeco Insurance Co. (1986) 187 Cal.App.3d 1502, 1507, 232 Cal.Rptr. 479 [definition of "prevailing party" found in section 1717 does not control whether and how fee-shifting is to take place upon dismissal of action pursuant to section 3250 by a subcontractor on a public works project against the prime contractor and its sureties for failure to pay for materials and labor; statutory attorney fees provision was controlling]; see also Pearl, Cal. Attorney Fee Awards, supra, § 2.1 at p. 2-2 [concept of "prevailing party" is treated differently for statutory and contractual fee awards]; id., § 6.21 at p. 6-27 [section 1717(b)(2) applies only to contractual fee claims and not to statutes authorizing fee awards]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 3 (The Rutter Group 1997) ¶¶11:39.20-11:39.22 [section *269 1717(b)(2) does not apply where fees are awardable by statute to the "prevailing party"; in such cases, the trial court must determine which party prevailed on a practical level].)
Heather Farms, supra, 21 Cal.App.4th 1568, 26 Cal.Rptr.2d 758, is perhaps most closely analogous to the instant case. In Heather Farms, Division Five of this court held that section 1717(b)(2) did not bar a prevailing defendant from recovering attorney fees following voluntary dismissal or dismissal pursuant to settlement of an action under section 1354 to enforce covenants, conditions, and restrictions (CC & Rs) for a residential planned unit development. (Heather Farms, supra, at p. 1572, 26 Cal. Rptr.2d 758.) This was so even though an action to enforce declarations containing CC & Rs had been held to be an "action on a contract" within the meaning of section 1717. (Heather Farms, supra, at p. 1572 & fn. 3, 26 Cal.Rptr.2d 758; Huntington Landmark Adult Community Assn. v. Ross (1989) 213 Cal.App.3d 1012, 1023-1024, 261 Cal.Rptr. 875; Mackinder v. OSCA Development Co. (1984) 151 Cal.App.3d 728, 738-739, 198 Cal. Rptr. 864 [section 1717 applies to "cases not technically based on a `contract' but ex contractu in nature"].) On the other hand, the Heather Farms court held that Code of Civil Procedure section 1032, subdivision (a), does not automatically authorize an award of attorney fees for a defendant who is the "prevailing party" for purposes of an award of costs. (Heather Farms, supra, 21 Cal. App.4th at p. 1572, 26 Cal.Rptr.2d 758, citing McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn. (1991) 231 Cal.App.3d 1450,1456, 282 Cal.Rptr. 828; see also Murillo v. Fleetwood Enterprises, Inc., supra, 17 Cal.4th at pp. 990-999, 73 Cal. Rptr.2d 682, 953 P.2d 858 [decision on "costs" under Code of Civil Procedure section 1032, subdivision (b), is independent of decision under one-way fee-shifting provision of the Song-Beverly Act]; Sears, supra, 60 Cal. App.4th at p. 1142, 70 Cal.Rptr.2d 769 ["By its own terms, section 1032 defines prevailing party only for `costs' under that section and does not purport to define it for other statutes."].)[12]
Of course, the Heather Farms court observed that the definitions of "prevailing party" found in section 1717(b), and in Code of Civil Procedure section 1032, subdivision (a), might nevertheless be persuasive as to the meaning intended in section 1354 under the principle that similar language used in statutes "in pari materia" (i.e., in statutes dealing with the same subject matter), should be given similar effect. (Heather Farms, supra, 21 Cal.App.4th at pp. 1572-1573, 26 Cal. Rptr.2d 758.) Ultimately, however, the Heather Farms court eschewed reliance on both provisions because they provide "conflicting definitions of the critical term," and because neither party had supplied a principled reason for selecting one definition over the other. (Ibid.) Instead, the court examined case law utilizing a "pragmatic approach" to determine who is a "prevailing party" under other fee-shifting statutes with language similar to that of section 1354, subdivision (f). (Heather Farms, supra, 21 Cal. App.4th at pp. 1573-1574, 26 Cal.Rptr.2d 758, citing Donald v. Cafe Royale, Inc., supra, 218 Cal.App.3d at p. 185, 266 Cal.Rptr. 804; Elster v. Friedman (1989) 211 Cal.App.3d 1439, 1444, 260 Cal.Rptr. 148; Winick Corp. *270 v. Safeco Insurance Co., supra, 187 Cal. App.3d at pp. 1506-1508, 232 Cal.Rptr. 479.)
There is, however, a critical difference between Heather Farms and the instant case. In Heather Farms, there was no attorney fees provision in the CC & R's or in any of the other governing documents involved in the action, and the dismissed defendant was seeking fees only under a statute, i.e., section 1354. (21 Cal.App.4th at p. 1572, 26 Cal. Rptr.2d 758.) Here, although Tamondong avers that her attorney fees claim is based solely on section 2983.4, it is nevertheless true that the loan agreement she signed contained an attorney fees clausealbeit a unilateral one. Damian contends that the mere existence of an attorney fees provision in the sales contract brings this case within section 1717 and requires us to find, in accordance with section 1717(b)(2), that there was no prevailing party after the voluntary dismissal in this case.
There is broad language in Santisas which, taken out of context, may be read to support Damian's position. After recounting the legislative history of section 1717, and amendments thereto, the Santisas court held: "[S]ection 1717 applies to contracts containing reciprocal as well as unilateral attorney fee provisions, including provisions ... authorizing recovery of attorney fees by a `prevailing party.'" (Santisas, supra, 17 Cal.4th at p. 614 & fn. 8, 71 Cal.Rptr.2d 830, 951 P.2d 399.)[13] The Supreme Court further noted that, "The operative language of section 1717 states that it applies `[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party....' [Citation.] Consistent with this language, this court has held that section 1717 applies only to actions that contain at least one contract claim. [Citations.]" (17 Cal.4th at p. 615, 71 Cal.Rptr.2d 830, 951 P.2d 399, italics in original.) The Santisas court further reasoned: "Because plaintiffs' complaint includes a claim for breach of contract within the scope of section 1717, we must look to section 1717 to determine whether the seller defendants are `part[ies] prevailing on the contract' who may recover attorney fees incurred in the defense of that claim." (17 Cal.4th at p. 615, 71 Cal.Rptr.2d 830, 951 P.2d 399.) Thus, although the seller defendants in Santisas were the "prevailing" parties both for purposes of the general cost statutes (Code Civ. Proc., §§ 1032, subd. (a)(4)), andas a matter of contract interpretation within the meaning of the reciprocal attorney fees provision in the real estate purchase agreement (in the ordinary or popular sense of that term, as the parties who succeeded in their litigation objective), section 1717 barred them from recovering attorney fees incurred to defend the "causes of action sounding in contract and based on a contract containing an attorney fees provision" because the plaintiff voluntarily dismissed those causes of action, among others. (17 Cal.4th at p. 617, 71 Cal.Rptr.2d 830, 951 P.2d 399.)
But those statements from Santisas have meaning only in the context of the case in which they were made. As the Santisas court itself noted: "An appellate decision is not authority for everything said in the court's opinion but only `for the points actually involved and actually decided.' [Citations.]" (17 Cal.4th at p. 620, 71 Cal.Rptr.2d 830, 951 P.2d 399.) In Santisas, the defendants asserted a "contractually based right" to recover attorney fees "arising from an express provision of the real estate purchase agreement" at issue in that case, so as to bring the decision on entitlement to attorney fees within the scope of section 1717. (17 Cal.4th at p. 607, 71 Cal.Rptr.2d 830, 951 P.2d 399.) However, the Santisas court was careful to distinguish the case before it from the situation whereas herethe defendant's "claim for attorney fees has a legal basis that is both independent of the cost statutes and grounded in a statute or other noncontractual source of law." (17 Cal.4th *271 at pp. 606-607, 71 Cal.Rptr.2d 830, 951 P.2d 399, fn. omitted, italics added.)
Nor does Olen advance Damian's cause. As our Supreme Court held in Santisas, supra, 17 Cal.4th 599, 71 Cal.Rptr.2d 830, 951 P.2d 399, Olen addressed only "the right to recover attorney fees under section 1717 following voluntary pretrial dismissal of the action," and did not "establish[] a rule extending beyond the reach of section 1717." (Santisas, supra, 17 Cal.4th at pp. 620-621, 71 Cal.Rptr.2d 830, 951 P.2d 399, italics omitted.) Thus, Olen did not preclude recovery of attorney fees by a defendant in a voluntarily dismissed "action on a contract" insofar as the fees were incurred in defending against noncontractual (e.g., tort and statutory) claims covered by a broadly-worded contractual attorney fees provision. (Ibid.) Similarly, Olen should not be read as creating a general rule against an award of attorney fees following voluntary dismissal of an action governed by a fee-shifting statute other than section 1717.
Finally, as the appellate department noted, it would undermine the Legislature's primary purpose in enacting section 2983.4 in the first placeto enable consumers with good claims or defenses to find attorneys willing to represent them in courtif we were to apply the rule of section 1717(b)(2) in a Rees-Levering Act case that was initiated by an automobile dealer (or, as here, its assignee), litigated up until the eve of trial, and then voluntarily dismissed. It would be incongruous to allow a dealer to take advantage of the "prevailing party" definition found in section 1717(b)(2) by inserting into a form contract subject to the Rees-Levering Act an unenforceable one-sided attorney fees provision (see § 1717, subd. (a))an abusive practice that both the Rees-Levering Act and section 1717 were designed to preventand thereby preclude an award of attorney fees to the buyer defendant that would otherwise be available, pursuant to section 2983.4 and Code of Civil Procedure sections 1032, subdivision (a), and 1033.5, subdivision (a)(10)(B), if there were no fees clause in the contract at all. In other words, the Legislature could not have intended to allow a dealer, by unilateral action contrary to public policy, to deprive a buyer of rights it had created by statute.

C. Whether Tamondong is the "Prevailing Party" in This Case is an Issue Entrusted to the Sound Discretion of the Trial Court.

It remains for us to decide whether Tamondong is correct when she claims she is, as a matter of law, the "prevailing party" in this action insofar as she is a "defendant in whose favor a dismissal [was] entered" (Code Civ. Proc., § 1032, subd. (a)(4)), and, thus, "entitled as a matter of right" to an award of attorney fees as part of her costs pursuant to Code of Civil Procedure sections 1032, subdivision (b), and 1033.5, subdivision (a)(10)(B). As we understand the Supreme Court's holding in Santisas, supra, recoverable litigation costs do include attorney fees when the party entitled to costs has an independent statutory basis upon which to claim recovery of attorney fees. (See 17 Cal.4th at pp. 606-607, 71 Cal.Rptr.2d 830, 951 P.2d 399.) In this case, an award of attorney fees is clearly "authorized by" section 2983.4 and is, thus, an item of litigation "costs" recoverable "as a matter of right" by a "prevailing party," including "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., §§ 1032, subds. (a), (b); 1033.5, subd. (a)(10)(B).)
However, we are not prepared to hold that every defendant as to whom a voluntary dismissal has been entered is also invariably a "defendant in whose favor a dismissal is entered" (Code Civ. Proc., § 1032, subd. (a)(4), italics added), and, therefore, as a matter of law, the "prevailing party" for purposes of a statutory fee award.[14] As our Supreme Court observed in Santisas, "[I]t seems inaccurate to characterize the defendant as the `prevailing party' if the plaintiff dismissed the action only after obtaining, by means of settlement or otherwise, all or most of the requested relief, or if the plaintiff *272-278 dismissed for reasons, such as the defendant's insolvency, that have nothing to do with the probability of success on the merits." (17 Cal.4th at p. 621, 71 Cal.Rptr.2d 830, 951 P.2d 399.)[15] The Heather Farms court also recognized that a defendant as to whom the plaintiff has voluntarily dismissed is not necessarily the "prevailing party" in the action. (21 Cal.App.4th at p. 1574, 26 Cal.Rptr.2d 758 [dismissal was more the result of obdurate behavior on the part of the defendant rather than any successful legal strategy].) On the other hand, it is certainly possible to view a dismissal as having been entered "in favor" of a defendant where a "plaintiff with only a marginal chance at recovery [has] invest[ed] only the filing fee to commence an action, [and] forc[ed] the opposing party to engage in expensive discovery, only to dismiss the action prior to final judgment when it appeared the case was sinking, Titanic-like, beneath the waves of overwhelming adverse evidence." (Catello, supra, 152 Cal.App.3d at p. 1013, 200 Cal. Rptr. 4.)
We do not decide whether Tamondong is the "prevailing party" in this Rees-Levering Act case, nor do we mean to suggest that the any of the scenarios posited by the courts in Santisas, Heather Farms, or Catello accurately describe the present litigation. Those cases merely demonstrate that the issue whether a voluntary dismissal was truly entered "in favor" of the defendant can arise in a variety of procedural settings, may involve questions of fact (see Coalition for Economic Survival v. Deukmejian (1985) 171 Cal. App.3d 954, 961-962, 217 Cal.Rptr. 621), and is in any event a matter best left to the sound discretion of the trial court (Heather Farms, supra, 21 Cal.App.4th at p. 1574, 26 Cal. Rptr.2d 758; see also Maria P. v. Riles (1987) 43 Cal.3d 1281, 1290-1291, 240 Cal. Rptr. 872, 743 P.2d 932; Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 685, 186 Cal.Rptr. 589, 652 P.2d 437). That is where we will leave the issue.

IV. Conclusion
For the foregoing reasons, the judgment of the appellate department is affirmed, and the case is remanded to the municipal court for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.
CORRIGAN and PARRILLI, JJ., concur.
NOTES
[1] All statutory references are to the Civil Code unless otherwise indicated.
[2] In relevant part, section 2983.4 provides: "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract or purchase order subject to the provisions of this chapter regardless of whether the action is instituted by the seller, holder or buyer...."
[3] For convenience, we will hereinafter refer to section 1717, subdivision (b)(2) as section 1717(b)(2).
[4] Of course, neither the trial court nor the appellate department had the benefit of our Supreme Court's recent decision in Santisas, or the parties' arguments based thereon.
[5] Specifically, Assembly Bill No. 563, as introduced by Assemblyman Brown on February 14, 1968, would have enacted section 1717 as follows: "In any action on a contract, the prevailing party, including a defendant as to whom the action is dismissed, shall be entitled to attorney's fees in addition to costs and necessary disbursements." (Assem. Bill No. 563 (1968 Reg. Sess.) italics added.) Similarly, Assembly Bill No. 563 would have amended section 2983.4 to read as follows: "Reasonable attorney's fees and costs shall be awarded to the prevailing party, including a defendant as to whom the action is dismissed, in any action on a conditional sales contract subject to the provisions of [the Rees-Levering Act] regardless of whether the action is instituted by the seller, holder, or buyer." (Assem. Bill No. 563 (1968 Reg. Sess.) italics added.) The italicized language would also have been added to section 1811.1. However, the italicized language was deleted from all three statutory provisions by a subsequent amendment. (See Assem. Bill No. 563 (1968 Reg. Sess.) as amended March 27, 1968.) Thereafter, section 1717 took an entirely new direction, providing only reciprocity for contractual attorney fees provisions, and narrowly defining the concept of "prevailing party" to include only "the party in whose favor final judgment is rendered." (Stats.1968, ch. 266, § 1, p. 578; see also Santisas, supra, 17 Cal.4th at p. 614, 71 Cal.Rptr.2d 830, 951 P.2d 399.)
[6] At the time, as Tamondong points out, Code of Civil Procedure former section 1031 authorized an award of "costs" to the "prevailing party" in an action in municipal court, including a defendant "as to whom the action is dismissed." Code of Civil Procedure former section 1032, subdivision (b) also authorized an award of costs to a defendant "as to whom the action is dismissed."
[7] Many courts since 1968 have observed that statutorily authorized attorney fees, as opposed to those authorized by contract, have consistently been deemed an element of costs. (E.g., Cummings v. Benco Building Services (1992) 11 Cal. App.4th 1383, 1386, 15 Cal.Rptr.2d 53; West Coast Development v. Reed (1992) 2 Cal.App.4th 693, 706, 3 Cal.Rptr.2d 790; Catello v. I.T.T. General Controls (1984) 152 Cal.App.3d 1009, 1013, 200 Cal.Rptr. 4; Marini v. Municipal Court (1979) 99 Cal.App.3d 829, 833-834, 160 Cal. Rptr. 465, citing T.E.D. Bearing Co. v. Walter E. Heller & Co. (1974) 38 Cal.App.3d 59, 62, 112 Cal.Rptr. 910; see also § 1033.5, subd. (c)(5).)
[8] By "reversal," we mean only rejection of the so-called "American rule" in favor of the so-called "English rule," under which the "losing party may be required to pay the winner's fees in addition to his or her own expenses." (Sears, supra, 60 Cal.App.4th at p. 1144, 70 Cal.Rptr.2d 769.)
[9] The 1981 amendments were directed to several other issues as well. For example, the third paragraph of section 1717, subdivision (a), was added to codify holdings of Beneficial Standard Properties, Inc. v. Scharps (1977) 67 Cal.App.3d 227, 136 Cal.Rptr. 549 and T.E.D. Bearing Co. v. Walter E. Heller & Co., supra, 38 Cal.App.3d 59, 112 Cal.Rptr. 910, which had held that attorney fees awarded pursuant to section 1717 are recoverable as an element of the costs of suit. (See Santisas, supra, 17 Cal.4th at p. 629, 71 Cal. Rptr.2d 830, 951 P.2d 399 (cone, and dis. opn. of Baxter, J.); Sears, supra, 60 Cal.App.4th at pp. 1145-1146, 70 Cal.Rptr.2d 769; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1028 (1981-1982 Reg. Sess.) as introduced, p. 2.)
[10] It is unclear whether Damian is contending that section 1717(b)(2) would apply in a Rees-Levering Act case where there is no contractual attorney fees provision at all, merely because that subdivision defines the term "prevailing party" for an "action on a contract." Certainly, Damian's "in pari materia" argument applies equally well in such a context.
[11] Literally hundreds of California statutes authorize an award of attorney fees to the prevailing party, or to one party, and many of those statutes relate to actions to vindicate rights that are essentially contractual. (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 1997) § 2.1, pp. 2-2 & 2-3; id. at pp. C-l to C-72 [chart: Selected California Fee-Shifting Statutes]; see also Murillo v. Fleetwood Enterprises, Inc. (1998) 17 Cal.4th 985, 998, fn. 4, 73 Cal.Rptr.2d 682, 953 P.2d 858 [estimates of between 35 and 151 one-way cost-and fee-shifting statutes in California].)
[12] A determination of entitlement to "costs" under Code of Civil Procedure section 1032 does not guarantee a statutory fee award because the "prevailing party" requirements of section 1032 and particular fee statutes are not necessarily the same. (See, e.g., Heather Farms, supra, 21 Cal. App.4th at pp. 1572, 1574, 26 Cal.Rptr.2d 758 [although defendant who was dismissed without prejudice from action to enforce CC & R's for residential planned unit development was entitled to recover costs pursuant to Code of Civil Procedure section 1032, subdivision (a)(4), trial court did not err in finding the defendant did not prevail in the action for purposes of section 1354, subdivision (f)]; Donald v. Cafe Royale, Inc. (1990) 218 Cal.App.3d 168, 185, 266 Cal. Rptr. 804 [although defendant restaurant owner may have qualified as the "prevailing party" under section 1032, subdivision (a)(4), as "`a defendant where neither plaintiff nor defendant obtains any relief,'" it was not the "prevailing party" for purposes of claim for injunctive relief under section 55 in the "legal and factual context" of the case insofar as injunctive relief was denied because the restaurant was no longer in business, not because disability access violations had not been demonstrated]; Winick Corp. v. Safeco Insurance Co., supra, 187 Cal.App.3d at pp. 1506-1508, 232 Cal.Rptr. 479.)
[13] In this regard, the Santisas court resolved a conflict that had emerged among the District Courts of Appeal. Specifically, the court disapproved the holding of Honey Baked Hams, Inc. v. Dickens (1995) 37 Cal.App.4th 421, 426, 43 Cal. Rptr.2d 595, which had in turn relied on language from Xuereb v. Marcus & Millichap, Inc. (1992) 3 Cal.App.4th 1338, 1342, 5 Cal.Rptr.2d 154. (Santisas, 17 Cal.4th at p. 614, fn. 8, 71 Cal.Rptr.2d 830, 951 P.2d 399.)
[14] We recognize our Supreme Court in Santisas appeared to equate the two terms when it held that the seller defendants were the "prevailing" parties for purposes of an award of non-attorney fee costs. (17 Cal.4th at p. 606, 71 Cal.Rptr.2d 830, 951 P.2d 399.) However, the issue was not clearly raised because the plaintiffs did not contest the point. (Ibid.)
[15] The Supreme Court also observed that Olen's concern about squandering "scarce judicial resources" on dismissed actions (21 Cal.3d at pp. 224-225, 145 Cal.Rptr. 691, 577 P.2d 1031) was overblown, and does not preclude trial courts from fashioning efficient procedures for making a "pragmatic" determination whether the defendant "has realized its litigation objectives" and is, thus, the "prevailing party" in a voluntary dismissal case. (Santisas, supra, 17 Cal.4th at pp. 621-622, 71 Cal.Rptr.2d 830, 951 P.2d 399, citing Hsu v. Abbara, supra, 9 Cal.4th at p. 877, 39 Cal.Rptr.2d 824, 891 P.2d 804.)