[No. E027841. Fourth Dist., Div. Two. Nov. 15, 2001.]

COMPUTERXPRESS, INC., Plaintiff and Respondent, v.
LEE JACKSON et al., Defendants and Appellants.

994

**COUNSEL**

Law Offices of Yvonne M. Renfrew and Yvonne M. Renfrew for Defendants and Appellants.

Best Best & Krieger, Douglas S. Phillips, G. Henry Welles and James C. Turney for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—Defendants appeal the denial of their motion, pursuant to Code of Civil Procedure section 425.16 (section 425.16), to strike the complaint of ComputerXpress, Inc. (ComputerXpress) as a "SLAPP" suit (strategic lawsuit against public participation). The trial court determined that none of ComputerXpress's claims was subject to section 425.16. Therefore, it did not require ComputerXpress to establish a probability of prevailing on its claims.

We agree that some of ComputerXpress's claims were not subject to section 425.16 and affirm the denial of the motion to strike those claims.

However, we conclude that some of the claims were subject to section 425.16. We further conclude ComputerXpress did not show a probability of prevailing on those claims and reverse the denial of the motion to strike those claims. Finally, we conclude defendants are entitled to recover attorney fees and costs incurred in moving to strike the claims subject to section 425.16.

## I

### PROCEDURAL BACKGROUND

The complaint, filed in March 2000, alleged: ComputerXpress is a public company selling computer-related products to the public. In February 1999, when ComputerXpress was considering a merger with businesses owned by defendants, defendants falsely represented that their businesses were profitable, causing ComputerXpress to incur expenses and waste time pursuing the merger. Later, in May 1999, defendants entered into a conspiracy to damage ComputerXpress's reputation and cause it economic harm. To that end, beginning in about August 1999, defendants made numerous false and disparaging statements about ComputerXpress on the Internet and elsewhere to existing and potential customers and investors, causing monetary damage to ComputerXpress.

Based on these alleged facts, the complaint asserted nine causes of action: (1) fraud; (2) negligent misrepresentation; (3) negligence; (4) trade libel; (5) interference with contractual relations; (6) interference with prospective economic advantage; (7) abuse of process; (8) conspiracy; and (9) injunctive relief.

On defendants' motion to strike the complaint, the court initially ruled the first three causes of action were not within the scope of section 425.16, but the remaining causes of action were. Later, however, the court changed its mind and ruled that defendants had not shown the remaining causes of action were within the scope of section 425.16. Therefore, it denied defendants' motion in its entirety, without ruling on whether ComputerXpress had shown a probability of prevailing.

## II

### DISCUSSION

A. *Burden of Proof and Standard of Review*

Section 425.16 applies to any cause of action arising from an " 'act in furtherance of a person's right of petition or free speech under the United

States or California Constitution in connection with a public issue.'" (§ 425.16, subds. (b)(1), (e).) Such a claim "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id.*, subd. (b)(1).) In order to encourage participation in matters of public significance, section 425.16 "shall be construed broadly." (*Id.*, subd. (a).)

The defendant has the initial burden of making a prima facie showing that the plaintiff's claims are subject to section 425.16. (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1042 [61 Cal.Rptr.2d 58]; *Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 742 [36 Cal.Rptr.2d 687].) If the defendant makes that showing, the burden shifts to the plaintiff to establish a probability of prevailing, by making a prima facie showing of facts which would, if proved, support a judgment in the plaintiff's favor. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].) Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 721 [77 Cal.Rptr.2d 1], disapproved on another point in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064 [82 Cal.Rptr.2d 10].)

### B. *Claims Subject to Section 425.16*

As used in section 425.16, an act in furtherance of a person's right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) We must first determine whether defendants met their burden of showing that ComputerXpress's claims were subject to section 425.16.

#### 1. *First, second, third, and fifth causes of action*

ComputerXpress's first three causes of action, for fraud, negligent misrepresentation, and negligence, were based on defendants' alleged false

representations in February 1999 that they owned solvent, profitable businesses which were appropriate for merger with ComputerXpress. ComputerXpress's fifth cause of action, for interference with contractual relations, alleged that in February 2000 ComputerXpress entered into a contract to sell computers to Cal Tech Solutions and that defendants then contacted Cal Tech and disparaged ComputerXpress and its officers and directors, causing Cal Tech to cancel the contract.

There was no indication, either in the complaint or in the evidence presented on the section 425.16 motion, that the conduct alleged in these causes of action occurred in connection with an official proceeding, concerned a public issue or issue of public interest, or took place in a public forum. However, defendants argue these causes of action were still subject to section 425.16, because (1) the complaint alleged a conspiracy covering all causes of action, some of which did involve public statements, and (2) in any event, section 425.16 applies to any suit filed after the defendant's exercise of speech or petition rights, not only to claims which are directly based on such conduct.

### a. *Conspiracy allegations*

Defendants note the complaint included causes of action, other than the first three and the fifth, which alleged conduct that did occur in an official or public context, such as defendants' filing of a complaint against ComputerXpress with the Securities and Exchange Commission (SEC) and posting messages on the Internet disparaging ComputerXpress. They argue that, in deciding whether section 425.16 applies, all of the acts alleged in all of ComputerXpress's causes of action must be considered together. They contend this is so because the eighth and ninth causes of action alleged that all of the alleged acts were performed in furtherance of a single conspiracy to interfere with ComputerXpress's business.

The eighth cause of action did allege a conspiracy to "interfere with Plaintiff's business and cause it substantial harm and damage." Nowhere, however, did it allege the conspiracy included the misrepresentations alleged in the first three causes of action. The eighth cause of action did not incorporate the allegations of the first three causes of action. Moreover, the eighth cause of action alleged the conspiracy occurred on or about May 2, 1999, months *after* the February 1999 misrepresentations alleged in the first three causes of action.

The ninth cause of action alleged a conspiracy to "damage the business reputation of Plaintiff and to cause Plaintiff as much economic harm as

possible . . . ." However, it alleged the conspiracy was to be implemented "through the dissemination of false and misleading information on the [I]nternet as set forth in the above counts incorporated herein." The allegations of the first three causes of action were not incorporated into the ninth cause of action, nor was there any allegation that the acts undertaken pursuant to the conspiracy included the misrepresentations during the merger negotiations. And again, the conspiracy was alleged to have begun on or about May 2, 1999, well after the merger negotiations.

The fifth cause of action differs from the first three in that the allegations contained in that cause of action were incorporated into the ninth cause of action, and the conduct alleged in the fifth cause of action occurred after the inception of the conspiracy alleged in the eighth and ninth causes of action. However, we are not persuaded that this degree of arguable connection between the fifth cause of action and the rest of the complaint means the fifth cause of action is a claim "arising from" the public speech and petition activity alleged elsewhere in the complaint.

The phrase "arising from" in section 425.16, subdivision (b)(1) has been interpreted to mean that "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must have been an act in furtherance of the right of petition or free speech. (*Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th 1036, 1043; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417 [103 Cal.Rptr.2d 174].) Even assuming, though the complaint did not so allege, that defendants' disparaging statements to Cal Tech Solutions were made pursuant to the conspiracy alleged in the eighth and ninth causes of action, it does not follow that the speech and petition activity alleged elsewhere in the complaint was part of "the act underlying" or "the act which forms the basis for" the fifth cause of action. That cause of action did not attempt to rely on the speech or petition activity as a basis for claiming interference. Rather, it simply alleged a direct contact between defendants and Cal Tech. There was no indication that any public activity, such as the SEC complaint or Internet statements, formed any part of the claim, nor that the alleged disparaging statements related in any way to any public issue or official proceeding.

Defendants note that the fifth cause of action did not specify the content of the alleged statements to Cal Tech Solutions, but merely described them as "disparaging remarks regarding Plaintiff and its officers and directors . . . ." Defendants suggest we therefore should *infer* that the content of the statements was the same as that of the SEC complaint and Internet statements which, as we determine later in this opinion, concerned issues of public interest. Making such an inference would permit defendants to invoke

the principle, discussed *post*, that even purely private speech may be covered by section 425.16 if it concerns a public issue. (*Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1174 [50 Cal.Rptr.2d 62].)

We believe that making the inference defendants suggest would effectively relieve them of their burden to make the initial showing that the claims they seek to strike fall within section 425.16, contrary to the authority discussed in part II.A., *ante*. We also note that, when it ruled none of ComputerXpress's causes of action was subject to section 425.16, the court did not preclude the possibility that defendants might later be able to show the fourth through ninth causes of action were subject to the statute. In fact, the court stated that those causes of action "could very well involve conduct described by the statute." It merely ruled that the papers submitted at that point were inadequate to permit that determination. If subsequent developments should reveal that the fifth cause of action was based on statements which concerned a public issue, the court may exercise its discretion, pursuant to section 425.16, subdivision (f), to permit defendants to renew their motion with respect to that cause of action.

### b. *Suit filed after speech or petition activity*

Defendants also argue that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself. They rely on *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628 [49 Cal.Rptr.2d 620] (*Wollersheim*) and *Averill v. Superior Court, supra*, 42 Cal.App.4th 1170 (*Averill*).[1]

*Wollersheim* was an action by the Church of Scientology to set aside a judgment Wollersheim had obtained against it in an earlier tort action. The court held section 425.16 applied to the action based, in part, on its finding that the suit was part of an extended course of oppressive litigation conduct designed to discourage Wollersheim's use of the courts. (*Wollersheim, supra*, 42 Cal.App.4th at pp. 648-649.)

*Wollersheim* cannot be read to mean that any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights. To the contrary, *Wollersheim* specifically

---

[1]Defendants also cite *Equilon Enterprises v. Consumer Cause, Inc.* (2000) 85 Cal.App.4th 654 [102 Cal.Rptr.2d 371]. However, after defendants filed their opening brief, the Supreme Court granted review in that case. (S094877, review granted Apr. 11, 2001.)

found that the church's suit *was* based on Wollersheim's exercise of such a right—it sought to set aside the judgment obtained in his *prior lawsuit* against the church, an exercise of his right of petition. (*Wollersheim, supra,* 42 Cal.App.4th at pp. 647-648.)

In defendants' other citation, *Averill, supra,* 42 Cal.App.4th 1170, a charitable organization sued Averill after she made allegedly slanderous remarks about the organization to her employer. The employer was supporting the organization's home for battered women, which Averill had publicly opposed. As defendants note, even though Averill's remarks were made in a private setting rather than publicly, the court held the suit was subject to section 425.16. (*Averill, supra,* at pp. 1175-1176.)

In *Averill,* however, the court stressed the fact that, while the remarks were private, the subject of the remarks—the home for battered women— had been a topic of considerable public controversy, including city council and planning commission hearings. It characterized the issue as whether section 425.16 covered "private conversations, *regarding a public issue* . . . ." (*Averill, supra,* 42 Cal.App.4th at p. 1174, italics added.) Thus, *Averill* cannot be read to mean that a private statement is covered by section 425.16 *regardless* of whether it concerns a public issue, simply because the person who made the statement also made public statements against the plaintiff at other times.

For these reasons, *Wollersheim* and *Averill* do not support defendants' contention that any suit filed after the defendant's exercise of its petition or free speech rights automatically comes within section 425.16. In each case, the conduct *on which the suit was based* occurred in connection with an official proceeding (*Wollersheim*) or related to a public issue (*Averill*). Therefore, these decisions do not warrant a departure from the rule cited *ante,* which requires that "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or free speech. (*Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th 1036, 1043; *Dowling v. Zimmerman, supra,* 85 Cal.App.4th 1400, 1417.) Under that rule, the trial court properly found the first three and the fifth causes of action were not subject to section 425.16.

ComputerXpress asserts this court must affirm the order denying defendants' SLAPP motion if it finds the motion was properly denied as to *any* cause of action in ComputerXpress's complaint. Since we have concluded, *ante,* that the motion was properly denied as to the first, second, third, and fifth causes of action, acceptance of ComputerXpress's position would mean we should affirm the order in its entirety.

ComputerXpress bases its position on this court's decision in *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623 [107 Cal.Rptr.2d 504] (*M.G.*). In *M.G.*, this court held that, where the plaintiffs had shown a probability of prevailing on some of their causes of action, the action as a whole could not be said to be without merit. Therefore it was unnecessary to consider whether the plaintiffs had shown they probably would prevail on the remaining causes of action. Instead, all of the causes of action should survive the defendants' SLAPP motion. (*Id.*, at p. 637.)

Defendants point out that the Court of Appeal for the Second District, Division Five, took the opposite view in *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141 [106 Cal.Rptr.2d 843] (*Shekhter*), a case decided shortly before *M.G.* In *Shekhter*, the court held that the express language of section 425.16, subdivision (b)(1) "allows a single cause of action to be stricken. The fact that other claims remain does not bar a trial judge from granting a section 425.16 special motion to strike." (*Shekhter, supra*, at p. 150.)

It is not necessary in this case to attempt to resolve the conflicting holdings in *M.G.* and *Shekhter*. We conclude that, no matter which decision is correct, the fact the SLAPP motion was properly denied as to some of ComputerXpress's causes of action does not preclude granting the motion as to the remaining causes of action. In *M.G.*, all of the causes of action were based on the same underlying conduct. Indeed, the court found four of the six causes of action to be, in reality, the same two causes of action, based on four different legal theories. The court also found the remaining two causes of action to be "probably cumulative" of the other four. (*M.G., supra*, 89 Cal.App.4th at p. 637.)

Under those circumstances, it can be said that, if one cause of action survives a SLAPP motion, the rest should too, because the causes of action are factually and legally intertwined. And because the causes of action are so closely related, even "cumulative," a probability of prevailing on one claim shows the rest of the claims are not without merit.

Here, however, the claims are not factually or legally intertwined. The causes of action we have concluded are not subject to being stricken—the first through third and the fifth—are based on entirely different conduct than the remaining causes of action. Moreover, the reason we have concluded the first through third and the fifth causes of action should not be stricken is not that ComputerXpress showed a probability of prevailing on those claims, but that the claims are not subject to the SLAPP statute, and hence ComputerXpress was not required to show a probability of prevailing. Therefore, the

rationale underlying *M.G.*'s holding—that a showing of a probability of prevailing as to one claim establishes that the lawsuit is not meritless—does not apply here.

Accordingly, we consider whether ComputerXpress's remaining claims are subject to the SLAPP statute and, if so, whether ComputerXpress showed a probability of prevailing on those claims.

### 2. *Remaining causes of action*

ComputerXpress's fourth cause of action, for trade libel, alleged that beginning in August 1999 defendants published to other persons false and disparaging statements about ComputerXpress and its officers and directors. The statements were published on the Internet and included claims that ComputerXpress's products were inferior, the company was a stock scam and would be out of business within 30 days, the officers and directors were illegally conspiring to manipulate the value of its stock, and one of the officers or directors had filed bankruptcy.

ComputerXpress's sixth cause of action, for interference with prospective economic advantage, alleged that beginning in November 1999 defendants posted thousands of messages on the Internet defaming ComputerXpress and its officers and directors. As a result, potential investors failed to invest in the company.

ComputerXpress's seventh cause of action, for abuse of process, alleged that in March 2000 defendants filed a complaint with the SEC containing "false allegations and accusations," presumably against ComputerXpress. Defendants then misused the legal process by posting the complaint on the Internet, to discourage potential investors.

ComputerXpress's eighth cause of action, for conspiracy, alleged that in May 1999 defendants conspired to file the SEC complaint and take other action to damage ComputerXpress, including creating a Web site and thousands of message board postings.

ComputerXpress's ninth cause of action, for injunctive relief, alleged that beginning in May 1999 defendants conspired to damage the business reputation of ComputerXpress. ComputerXpress sought to enjoin defendants from publishing false and/or disparaging remarks about the company and to require them to withdraw remarks previously published.

As our recitation indicates, the conduct on which these causes of action were based fell into two categories: Internet postings and the SEC

complaint. We must determine whether defendants met their initial burden of making a prima facie showing that these causes of action were subject to section 425.16.

### a. *Internet postings*

The complaint alleged defendants published their disparaging Internet statements on the message board of a Web site known as "Raging Bull" and also on a site they established known as "Ogravity99." Defendants contend these statements were made in a public forum and concerned an issue of public interest, and therefore they came within section 425.16, subdivision (e)(3). ComputerXpress contends the postings simply involved statements of one company regarding the conduct and products of a competitor company, and therefore they did not involve a public forum or issue of public interest.

### (1) *Public forum*

Cases construing the term "public forum" as used in section 425.16 have noted that the term "is traditionally defined as a place that is open to the public where information is freely exchanged." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475 [102 Cal.Rptr.2d 205].) "Under its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication." (*Id.*, at p. 476.) Thus, the court in *Damon v. Ocean Hills Journalism Club* held that a homeowners association newsletter was a public forum for purposes of section 425.16, because it was "a vehicle for open discussion of public issues and was widely distributed to all interested parties . . . ." (*Damon, supra*, at p. 478.)[2]

Electronic communication media may also constitute public forums. A federal court recently stated that a widely disseminated television broadcast was "undoubtedly a public forum" for purposes of section 425.16. (*Metabolife Internat., Inc. v. Wornick* (S.D.Cal. 1999) 72 F.Supp.2d 1160, 1165.) Apropos of this case, though not in the context of section 425.16, the court in *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170 [94 Cal.Rptr.2d 453] noted that Internet communications have been described as "classical forum communications." (*Id.*, at p. 201, fn. omitted.)

---

[2]The court noted two previous decisions had concluded, or suggested in dictum, that a newspaper was not a public forum. (*Zhao v. Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909], overruled on other grounds in *Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1107; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 863, fn. 5 [44 Cal.Rptr.2d 46] [dictum].) It disagreed with these decisions, noting in part that they predated the amendment to section 425.16 stating the statute is to be construed broadly. (*Damon v. Ocean Hills Journalism Club, supra*, 85 Cal.App.4th at p. 478.)

A federal court recently described the Raging Bull Web site as "a financial website that organizes individual bulletin boards or 'chat-rooms,' each one dedicated to a single publicly traded company. The chat-rooms are open and free to anyone who wants to read the messages; membership is also free and entitles the member to post messages. . . . [¶] Unlike many traditional media, there are no controls on the postings. Literally anyone who has access to the Internet has access to the chat-rooms." (*Global Telemedia Intern., Inc. v. Doe 1* (C.D.Cal. 2001) 132 F.Supp.2d 1261, 1264.)

Defendant Tom Mitchell stated in a declaration in support of defendants' section 425.16 motion that the Ogravity99 Web site is accessible free of charge to any member of the public. Mitchell further stated the site provides a forum where members of the public may read the views and information posted, and post on the site their own opinions.

Thus, both the Raging Bull and Ogravity99 sites satisfy the criteria for a public forum set forth in *Damon v. Ocean Hills Journalism Club, supra*, 85 Cal.App.4th 468: "a place that is open to the public where information is freely exchanged." (*Id.*, at p. 475.) In fact, the Web sites in this case present even a stronger case for qualification as public forums than did the newsletter involved in *Damon*. While newspapers exercise editorial control over access to their pages, that feature is not shared by the Web sites involved here. We therefore conclude defendants made a prima facie showing that the Web sites involved in this case were public forums for purposes of section 425.16.

### (2) *Public interest*

The remaining issue is whether defendants' statements on the Web sites were made "in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) *Global Telemedia Intern., Inc. v. Doe 1, supra*, 132 F.Supp.2d 1261 (*Global Telemedia*) involved closely analogous facts. The plaintiff, a publicly traded company, sued the defendants for trade libel and interference with prospective economic advantage based on messages the defendants posted on the Raging Bull bulletin boards. The messages criticized the plaintiff and its management.

The court held the messages concerned a public issue for purposes of section 425.16. It noted the plaintiff was a publicly traded company with as many as 18,000 investors and had inserted itself into the public arena by means of numerous press releases. (*Global Telemedia, supra*, 132 F.Supp.2d at p. 1264.) The court in *Wollersheim* similarly stated, albeit in dictum, that examples of matters of public interest may include activities of private

entities that may impact the lives of many individuals, such as "product liability suits, real estate or investment scams, etc." (*Wollersheim, supra*, 42 Cal.App.4th 628, 650.)

Here, like the plaintiff in *Global Telemedia*, ComputerXpress is a publicly traded company. Although the record does not appear to indicate how many shareholders it has, indications of the number of ComputerXpress shares outstanding vary from 12,000,000 to 24,000,000. ComputerXpress's allegation that it lost $10,000,000 as a result of failure of potential investors to purchase its stock due to defendants' conduct further suggests its public importance is at least comparable to that of the plaintiff in *Global Telemedia*. We also note ComputerXpress apparently made use of press releases in an effort to promote the company.

ComputerXpress argues that statements of one company regarding a competitor company do not fall within section 425.16, citing *Globetrotter Software, Inc. v. Elan Computer Group, Inc.* (N.D.Cal. 1999) 63 F.Supp.2d 1127. The court in *Global Telemedia* distinguished *Globetrotter Software* on the basis that the defendants in *Global Telemedia* were not in the plaintiff's business or a competing business and "were speaking not as competitors, but simply as investors." (*Global Telemedia, supra*, 132 F.Supp.2d at p. 1266.) The same appears to be true here. Although defendants at one time contemplated a merger with ComputerXpress, the record does not indicate that the defendants who published the Web site messages were in competition with ComputerXpress when they made the postings. Further, the tenor of the messages indicates defendants were speaking "as investors" rather than competitors (*ibid.*), as the comments in the messages appear to have been directed at existing or potential shareholders rather than potential customers.

For these reasons, we conclude the record contains adequate prima facie evidence that defendants' Internet messages were made in connection with an issue of public interest.

b. *SEC complaint*

Defendants' papers in support of their motion to strike showed that on March 12, 2000, defendants Lee Jackson and Tom Mitchell sent to the SEC a letter of complaint against the corporate predecessor to ComputerXpress and its officers and directors. The complaint stated the company had issued press releases which allegedly distorted or exaggerated the facts, driving the stock prices up. The complaint also stated the company president had participated in Internet marketing letters that were much like chain letters and had publicly promoted a stock prior to the public release date. Finally, it

stated the authors believed unrestricted stock had been issued to company principals without proper disclosure.

Defendants contend their filing of the complaint with the SEC, and subsequently posting the complaint on the Internet, fell within section 425.16, subdivision (e), as (1) a statement before an official proceeding, (2) a statement in connection with an issue under consideration in an official proceeding, (3) a statement in a public forum in connection with an issue of public interest, and/or (4) other conduct in furtherance of the right of petition or free speech in connection with an issue of public interest.

We have little difficulty concluding that the filing of the complaint qualified at least as a statement before an official proceeding. ComputerXpress contends defendants failed to show the subject of their complaint was ever " 'under consideration or review by' " the SEC. However, the purpose of the complaint was to *solicit* an SEC investigation. In the analogous context of the privilege under Civil Code section 47 for a statement in an official proceeding, the California Supreme Court has observed that the term "official proceeding" "has been interpreted broadly to protect communications to or from *governmental* officials *which may precede the initiation of formal proceedings.*" (*Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886], second italics added.) Thus, " 'communication to an official administrative agency . . . designed to prompt action by that agency' " is " 'as much a part of the "official proceeding" as a communication made after the proceedings had commenced.' " (*Kim v. Walker* (1989) 208 Cal.App.3d 375, 383 [256 Cal.Rptr. 223]; accord, *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 30 [61 Cal.Rptr.2d 518].)

ComputerXpress notes that investigations and, in some cases, hearings conducted by the SEC are not public. However, in *Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th 1036, the court held that an investigative audit, conducted by the State Auditor, was an official proceeding for purposes of section 425.16 even though it was closed to the public. The court reasoned that the audit was "an authorized, public proceeding" because it was "government-sponsored and provided for by statute." (*Braun, supra,* at p. 1049.) The same is true of SEC proceedings, whether or not they are public.

ComputerXpress contends that, even if the filing of the SEC complaint fell within section 425.16, the posting of it on the Internet was not connected to any official proceeding and therefore was not protected. For the reasons set forth in part II.B.2.a., *ante,* with respect to defendants' other Internet postings concerning ComputerXpress, we conclude the posting of the complaint amounted to a statement in a public forum in connection with an issue

of public interest. ComputerXpress's possible securities law violations qualified as an issue of public interest to the investing public just as its management and performance did. The posting of the complaint therefore also fell within section 425.16.

## C. *Probability of Prevailing*

As we have determined that the Internet postings and SEC complaint fell within section 425.16, ComputerXpress's fourth and sixth through ninth causes of action based on that conduct were subject to a motion to strike unless ComputerXpress showed a probability of prevailing on those claims. (§ 425.16, subd. (b)(1).) ■■■ To show a probability of prevailing for purposes of section 425.16, a plaintiff must " ' "make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor." ' " (*Kyle v. Carmon, supra,* 71 Cal.App.4th 901, 907.) This standard is "similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment," in that the court cannot weigh the evidence. (*Ibid.*; accord, *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 827 [33 Cal.Rptr.2d 446].) However, the plaintiff "cannot simply rely on the allegations in the complaint" (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364, fn. 5 [102 Cal.Rptr.2d 864]), but "must provide the court with sufficient *evidence* to permit the court to determine whether 'there is a probability that the plaintiff will prevail on the claim.' " (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [92 Cal.Rptr.2d 755], italics added.) We must determine whether the evidence submitted by ComputerXpress satisfied that standard.[3]

### 1. *Fourth cause of action—trade libel*

■■■ Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 572 [264 Cal.Rptr. 883].) The tort encompasses "all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so." (*Ibid.*)

To constitute trade libel, a statement must be false. (*Leonardini v. Shell Oil Co., supra,* 216 Cal.App.3d 547, 572.) Since mere opinions cannot by

---

[3]ComputerXpress filed two sets of papers presenting evidence in opposition to defendants' motion to strike. The court refused to consider the second set, which was filed late. We have reviewed the supplemental papers and conclude that, even considering the evidence there set forth, ComputerXpress failed to establish a probability of prevailing on its fourth and sixth through ninth causes of action. We therefore need not decide whether the trial court should have considered the papers.

definition be false statements of fact, opinions will not support a cause of action for trade libel. (*Hofmann Co. v. E. I. Du Pont De Nemours & Co.* (1988) 202 Cal.App.3d 390, 397 [248 Cal.Rptr. 384].)

In most cases, whether a statement is fact or opinion is a question of law. (*Hofmann Co. v. E. I. Du Pont de Nemours & Co., supra,* 202 Cal.App.3d 390, 397.) To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context. (*Id.,* at p. 398.) However, where a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the plaintiff to plead the facts showing its defamatory meaning. (*Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 774 [215 Cal.Rptr. 416].)

■ ComputerXpress failed to demonstrate how defendants' Internet postings, on which the fourth cause of action is based, were false or defamatory. In fact, it has not even identified which of the numerous postings included in the record it contends were actionable. Instead, ComputerXpress simply refers this court to the 131 pages of Internet postings contained in the record, apparently assuming it is the court's obligation to determine how they support ComputerXpress's position.

This is a wholly unacceptable method of appellate advocacy. ■ Rule 15(a) of the California Rules of Court provides: "The statement of any matter in the record shall be supported by appropriate reference to the record." It is not the duty of a reviewing court to search the record for evidence on a point raised by a party whose brief makes no reference to the pages where the evidence can be found. (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1093 [234 Cal.Rptr. 835]; *Metzenbaum v. Metzenbaum* (1950) 96 Cal.App.2d 197, 199 [214 P.2d 603].)

■ Moreover, having reviewed them, we find nothing in the Internet postings which would satisfy the requirements for trade libel as discussed *ante.* The court in *Global Telemedia, supra,* 132 F.Supp.2d 1261, granted a motion to strike a trade libel claim pursuant to section 425.16 under closely analogous circumstances. The defendants posted allegedly libelous statements about the plaintiff, a publicly traded company, on the Raging Bull message boards. The court concluded the company had not shown a probability of prevailing, because "the general tenor, the setting and the format" of the postings strongly suggested they were opinion. The postings "were part of an on-going, free-wheeling and highly animated exchange" about the company and were "full of hyperbole, invective, short-hand phrases and

language not generally found in fact-based documents, such as corporate press releases or SEC filings." Therefore, they lacked "the formality and polish typically found in documents in which a reader would expect to find facts." (*Global Telemedia, supra*, at p. 1267.)

Among the postings the *Global Telemedia* court found not actionable were statements that: the company's public relations documents gave it the appearance of being " 'high tech,' " but its products were " 'slow or nonexistent' "; the company was steering a " 'sinking ship' "; investors were " 'being manipulated by the company so that they can fly the coop again' "; shareholders had been " 'screwed out of your hard earned money' " and it was " 'time to talk about a lawsuit' "; and the principals of the company were guilty of " 'blatant mismanagement' " and would hold shareholders' money and " 'dictate after they lie how it will be used.' " (*Global Telemedia, supra*, 132 F.Supp.2d at pp. 1268-1269.) The court found these statements would be seen by a reasonable reader as mere invective of a disgruntled shareholder, "probably not written by someone with authority or firm factual foundations for his beliefs." (*Id.*, at p. 1269.) Therefore, the statements could not have had the alleged defamatory effect of causing the company's stock to lose value.

The Internet postings in this case were comparable in tone and substance to those in *Global Telemedia*. Without citing any specific postings, the complaint alleged four defamatory statements: "that the computer product featured on Plaintiff's own website was of inferior quality, that Plaintiff was merely a stock 'scam' certain to be out of business within thirty days, that the officers and directors of Plaintiff were illegally conspiring with marketmakers for the company's stock to manipulate its value, that one of Plaintiff's officers or directors had filed bankruptcy, etc." Our own review of the postings indicates the following disparaging statements:

ComputerXpress's stock fluctuated dramatically because "they never have real substance behind their news, IMO,"[4] so that "the suckers jump in before verifying anything" and then "jump out when they see it was more BS than PR."

"[A]n officer/director (former?)" of ComputerXpress had "declared recent bankruptcy." Two days later, this statement was clarified to state that a corporation owned by the former president of ComputerXpress had "filed for chapter 7 bankruptcy in October of 1999."

Investors were "either swallowing complete bull" or "participating in what I think is a fraud" and should not be surprised if the ComputerXpress

---

[4]It is apparent from another posting that the abbreviation "IMO," which appears in many other postings as well, stands for "in my opinion."

promoters "try to continue this for another 30 days (the time they have to comply or revert to pink sheets) to suck out as much as they can . . . ."

The ComputerXpress promoters acted as they did because "greed set in; and a belief that they cou[l]d 'operate under the radar' and get away with whatever they wanted to because there was not enough official care to be concerned about. I firmly believe that they care nothing about generating a genuine business, and everything about selling the stock . . . ."

When ComputerXpress announced the intended merger with defendants' businesses to the public, it had already filed a letter with the SEC promoting a different type of affiliate program not mentioned to the public until months later. "[I]s that fraud?"

"You guys really seem to think you can sucker a lot of people all the time!"

"When the people who have . . . been duped into this stock realize the scam they were coaxed into, my guess is there will be hell to pay."

"[W]ill someone please tell me why ANYONE would believe ANYTHING these guys and their pump and dump supporters say?"

As is apparent from this recitation, while the postings certainly could be considered disparaging, their tone and content identified them as statements of opinion and not fact. Like the postings in *Global Telemedia*, they were hyperbolic, informal, and lacked the characteristics of typical fact-based documents. Moreover, they were replete with explicit statements of opinion, such as "IMO [in my opinion]," "what I think is a fraud," "I firmly believe," "is that fraud?" and "my guess is."

Other statements, such as the asserted inconsistency between Computer-Xpress's public relations releases and its actual operations, or the assertion that its promoters only cared about selling stock and not about generating a genuine business, were too vague to be taken as fact by a reasonable reader. In the few instances in which the postings did contain apparent statements of facts—such as the statement that a company owned by the former president had filed for bankruptcy, or that ComputerXpress had 30 days "to comply or revert to pink sheets"—ComputerXpress failed to present evidence that the statements were false.

This court has observed that, because section 425.16's requirement that a plaintiff establish a probability of prevailing "is intended to 'provid[e] a fast

and inexpensive unmasking and dismissal of SLAPP's,' " a more lenient standard would not be appropriate. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 16 [43 Cal.Rptr.2d 350].) Although ComputerXpress's displeasure at the Internet postings involved here is understandable, despite two opportunities to demonstrate that the postings constituted false and defamatory statements of fact, ComputerXpress failed to do so. ComputerXpress therefore failed to establish a probability of prevailing on its cause of action for trade libel.

### 2. *Sixth cause of action—interference with prospective economic advantage*

ComputerXpress's claim for interference with prospective economic advantage, like its claim for trade libel, was based on defendants' Internet postings. Like the tort of trade libel, interference with prospective economic advantage requires false statements of fact. "A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party." (*Savage v. Pacific Gas & Electric Co.* (1993) 21 Cal.App.4th 434, 449-450 [26 Cal.Rptr.2d 305].) Further, a plaintiff cannot state a cause of action for interference with prospective economic advantage based on " 'loose, figurative, or hyperbolic language' " (*Morningstar, Inc. v. Superior Court* (1994) 23 Cal.App.4th 676, 697 [29 Cal.Rptr.2d 547]) or mere opinions, unless shown to be not genuinely held and advanced for the sole purpose of harming the plaintiff. (*Hofmann Co. v. E. I. Du Pont de Nemours & Co.*, *supra*, 202 Cal.App.3d 390, 403.)

 As we have concluded in part II.C.1., *ante*, that the Internet postings were not actionable trade libel, they also could not support a claim for interference with prospective economic advantage. ComputerXpress failed to establish a probability of prevailing on its sixth cause of action.

### 3. *Seventh cause of action—abuse of process*

 Abuse of process consists of "[t]he use of *the machinery of the legal system* for an ulterior motive . . . ." (*Trear v. Sills* (1999) 69 Cal.App.4th 1341, 1359 [82 Cal.Rptr.2d 281], italics added.) Because the purpose of the tort is "to preserve the integrity of the court," it "requires misuse of a *judicial* process . . . ." (*Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1822-1823 [31 Cal.Rptr.2d 229].) The tort therefore does not extend to misuse of administrative proceedings, even those involving agencies with " 'quasi-judicial' powers . . . ." (*Id.*, at p. 1823 [misuse of administrative process of Federal Communications Commission not abuse of process].)

ComputerXpress's seventh cause of action alleged defendants misused the legal process by posting the SEC complaint on the Internet. There was no allegation of any misuse of the *judicial* process. ComputerXpress failed to establish a probability of prevailing on its claim for abuse of process.

### 4. *Eighth cause of action—conspiracy*

" 'A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve.' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513 [28 Cal.Rptr.2d 475, 869 P.2d 454].) Therefore, "conspiracy to commit a tort is not a separate cause of action from the tort itself . . . ." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 845 [33 Cal.Rptr.2d 438].)

ComputerXpress's conspiracy claim was based on the Internet postings and the filing of the SEC complaint. We have previously determined that the postings were not actionable under any tort theory pled in ComputerXpress's complaint. The filing of the SEC complaint clearly was absolutely privileged under Civil Code section 47, subdivision (b), which as stated *ante* protects " 'communication to an official administrative agency . . . designed to prompt action by that agency . . . .' " (*Kim v. Walker, supra,* 208 Cal.App.3d 375, 383; accord, *Slaughter v. Friedman, supra,* 32 Cal.3d 149, 156; *Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th 15, 30.) It follows that ComputerXpress failed to establish a probability of prevailing on its conspiracy cause of action.

### 5. *Ninth cause of action—injunction*

As ComputerXpress points out, injunctive relief is sometimes available as a remedy for trade libel. (*Leonardini v. Shell Oil Co., supra,* 216 Cal.App.3d 547, 579.) However, while such relief is available "in the ordinary case involving private disputes," it is not available to restrain debate about public issues, even where false statements are involved. (*Id.,* at pp. 578-579.) " 'The concept that a statement on a public issue may be suppressed because it is believed by a court to be untrue is entirely inconsistent with constitutional guarantees and raises the spectre of censorship in a most pernicious form.' " (*Id.,* at p. 578, quoting *Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658-659 [119 Cal.Rptr. 468, 532 P.2d 116].)

We have previously determined that the statements ComputerXpress sought to enjoin concerned a public issue, not a mere private dispute. Even if that were not the case, as discussed *ante,* the statements were not actionable as trade libel. Accordingly, ComputerXpress failed to establish a probability of prevailing on its injunction cause of action.

## D. *Attorney Fees and Costs*

■ The remaining question is whether defendants are entitled to attorney fees and costs pursuant to section 425.16, subdivision (c). That provision states in relevant part that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Defendants contend this language mandates an award of fees and costs to the defendant any time a SLAPP motion is granted, even in part. Computer-Xpress, on the other hand, contends that, because we have concluded defendants' SLAPP motion properly was denied as to four out of the nine causes of action of the complaint, defendants should not be considered to have prevailed on the motion for purposes of section 425.16.

Section 425.16, subdivision (c) does not define the term "prevailing defendant." In particular, it does not state whether a defendant is deemed to have prevailed if its SLAPP motion is granted as to some claims and denied as to others. Recently, the court in *Shekhter, supra,* 89 Cal.App.4th 141, held that, where the defendants successfully argued on appeal that their motion to strike one cause of action as a SLAPP claim should have been granted, they were entitled to attorney fees even though another cause of action remained pending. (*Id.,* at p. 154.) However, the court did not specifically discuss the issue whether the defendants could be considered the prevailing parties under the circumstances.

In the context of contractual fee awards under Civil Code section 1717, the rule is that in cases of "mixed" results, where a party " 'receives only a part of the relief sought,' " the court may determine there is no prevailing party. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 875 [39 Cal.Rptr.2d 824, 891 P.2d 804]; accord, *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 [86 Cal.Rptr.2d 614, 979 P.2d 974]; see also *Hilltop Investment Associates v. Leon* (1994) 28 Cal.App.4th 462, 468 [33 Cal.Rptr.2d 552] [fees properly denied where result is " 'good news and bad news to each of the parties' "].) In deciding whether there is a prevailing party, the court is to "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu, supra,* at p. 876.) The court has discretion to find there is no prevailing party even though Civil Code section 1717, subdivision (a) states that the prevailing party "shall" be entitled to recover fees.

Civil Code section 1717, unlike Code of Civil Procedure section 425.16, expressly provides that the court may determine there is no prevailing party. (Civ. Code, § 1717, subd. (b)(1).) However, courts in cases involving other

statutes which provide that the prevailing party "shall" recover attorney fees also have concluded that a court has the discretion to find there is no prevailing party, even though the statute does not expressly say so. (See, e.g., *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 [26 Cal.Rptr.2d 758] (*Heather Farms*) [Civ. Code, § 1354, subd. (f)]; *Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1277-1278 [64 Cal.Rptr.2d 659] (*Gilbert*) [Civ. Code, § 3344, subd. (a)]; *Damian v. Tamondong* (1998) 65 Cal.App.4th 1115, 1128-1130 [77 Cal.Rptr.2d 262] (*Damian*) [Civ. Code, § 2983.4].) The determination of whether there is a prevailing party is to be made "on a practical level" after considering what each party accomplished via the litigation. (*Heather Farms, supra*, at p. 1574; *Gilbert, supra*, at p. 1277.) In *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94 [77 Cal.Rptr.2d 600] (*Coltrain*), this court adopted the discretionary approach set forth in *Heather Farms, Gilbert*, and *Damian* for purposes of awarding attorney fees under the SLAPP statute, concluding that the critical issue in determining which party has prevailed is "which party realized its objectives in the litigation." (*Coltrain*, at p. 107.)

These decisions, however, are of limited assistance in considering the proper application of section 425.16, subdivision (c) in this case. In each of the decisions cited above, the litigation terminated without a court determination of the merits of the suit. In *Heather Farms, Gilbert*, and *Damian*, the actions were dismissed without prejudice prior to trial. (*Heather Farms, supra*, 21 Cal.App.4th 1568, 1570-1571; *Gilbert, supra*, 55 Cal.App.4th 1273, 1275; *Damian, supra*, 65 Cal.App.4th 1115, 1118.) In *Coltrain*, similarly, the plaintiffs voluntarily dismissed their complaint without prejudice before any ruling on the defendants' SLAPP motion. (*Coltrain, supra*, 66 Cal.App.4th 94, 100.) Absent a determination of the merits, it may be difficult or impossible to decide which party has prevailed as a practical matter, and the court may appropriately find there is no prevailing party.

Here, in contrast, we have determined the SLAPP motion was meritorious as to five out of the nine causes of action to which it was directed. As to those five causes of action, at least, defendants clearly prevailed.

The decisions applying Civil Code section 1717 also are of limited assistance in this case. The purpose of section 1717 is "to establish mutuality of remedy when a contract makes recovery of attorney fees available only for one party and to prevent the oppressive use of one-sided attorney fees provisions. [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1090-1091 [95 Cal.Rptr.2d 198, 997 P.2d 511].) The intent of the Legislature, therefore, was to make attorney fees equally available to both sides where they would not have been equally available under the literal terms of the agreement.

Section 425.16, subdivision (c), however, evidences a legislative intent to do more than make fees and costs equally available to both sides. Instead, the statute reflects a clear preference for awarding fees and costs to prevailing defendants. Section 425.16, subdivision (c) provides that a prevailing *defendant* on a SLAPP motion to strike "shall be entitled to recover his or her attorney's fees and costs." A prevailing *plaintiff*, however, can only recover fees and costs "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay . . . ."

This differential standard for awarding fees and costs is in keeping with the statement of legislative purpose in section 425.16, subdivision (a). The Legislature in that provision found "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Accordingly, "it is in the public interest to encourage continued participation in matters of public significance," and to ensure "that this participation . . . not be chilled through abuse of the judicial process."

Section 425.16, subdivision (c)'s preference for awarding fees and costs to defendants is analogous to the rule followed in cases arising under the federal civil rights statutes. Title 42 United States Code section 1988 (section 1988) provides that, in such cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." Despite its seeming neutral language, cases applying section 1988 hold that "[a] prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 429, fn. 2 [103 S.Ct. 1933, 1937, 76 L.Ed.2d 40] (*Hensley*); see also *Hughes v. Rowe* (1980) 449 U.S. 5, 14-15 [101 S.Ct. 173, 178-179, 66 L.Ed.2d 163].) In contrast, "a prevailing plaintiff ' "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' " (*Hensley, supra,* at p. 429 [103 S.Ct. at p. 1937].)

A defendant making a SLAPP motion and a plaintiff in a civil rights action thus enjoy the same preference for attorney fees if they are successful. Given this similarity in approach between Code of Civil Procedure section 425.16, subdivision (c) and United States Code section 1988, authority under section 1988 is particularly helpful in applying section 425.16, subdivision (c).

In *Hensley* the United States Supreme Court considered the proper application of section 1988 where the plaintiff prevails on some but not all of his

or her claims. The court stated that, for purposes of the threshold determination of whether the plaintiff has prevailed at all, " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " (*Hensley, supra,* 461 U.S. at p. 433 [103 S.Ct. at p. 1939].) However, where the plaintiff in one lawsuit presents "distinctly different claims for relief that are based on different facts and legal theories," he or she cannot recover fees incurred in pursuing an unsuccessful claim. (*Id.,* at pp. 434-435 [103 S.Ct. at p. 1940].) On the other hand, if the plaintiff's successful and unsuccessful claims involve a common core of facts or related legal theories, the court should determine "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." (*Id.,* at p. 435 [103 S.Ct. at p. 1940].) "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." (*Id.,* at p. 440 [103 S.Ct. at p. 1943].)

California courts applying the private attorney general statute, Code of Civil Procedure section 1021.5, have adopted the same approach. Thus, in cases under section 1021.5, the courts hold that "a party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of the section. [Citations.]" (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 846 [216 Cal.Rptr. 649].) Rather, "when a plaintiff is successful within the meaning of the section, the fact that he or she has prevailed on some claims but not on others is a factor to be considered in determining the amount of the fee awarded." (*Id.,* at pp. 846-847, citing *Hensley, supra,* 461 U.S. 424.)

Earlier this year, the court in *Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381 [107 Cal.Rptr.2d 29] (*Los Angeles Times*) applied a similar approach in construing the California Public Records Act. (Gov. Code, § 6250 et seq.) Section 6259, subdivision (d) of that act, which provides for attorney fees and costs, is closely analogous to Code of Civil Procedure section 425.16, subdivision (c). Government Code section 6259, subdivision (d) provides that the court "shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation" seeking disclosure of records from a public agency. However, the court shall award fees and costs to the public agency only if it finds "that the plaintiff's case is clearly frivolous . . . ." (*Ibid.*)

The court in *Los Angeles Times* held that a plaintiff who sued to obtain disclosure of two documents, but succeeded in obtaining only one, nonetheless was a prevailing party entitled to attorney fees and costs under the

statute. The court acknowledged the possibility that in some cases a plaintiff might obtain documents that are so minimal or insignificant as to justify a finding that it did not prevail. It concluded, however, that, absent such circumstances, fees and costs should be awarded. To do otherwise would be inconsistent with the express purpose of the statute, "to broaden public access to public records," and "would chill efforts to enforce the public right to information." (*Los Angeles Times, supra,* 88 Cal.App.4th at p. 1392.)

These authorities support the conclusion that defendants in this case should be considered prevailing parties, and therefore should recover attorney fees and costs, notwithstanding their partial success on their SLAPP motion. As with the federal civil rights statutes and the California Public Records Act, the differential standard for awarding fees reflects a preference for compensating parties who further the public policies underlying the SLAPP statute through their litigation efforts. The approach adopted in the cases applying those analogous statutes, under which partial success reduces but does not eliminate the entitlement to attorney fees, therefore should be applied here.

As discussed previously, the causes of action we have concluded are not subject to being stricken are based on different conduct than the remaining causes of action. Therefore, the problems alluded to in *Hensley* that may arise where the successful and unsuccessful claims are legally or factually related are not present. Defendants consequently are entitled to recover attorney fees and costs incurred in moving to strike the claims on which they prevailed, but not fees and costs incurred in moving to strike the remaining claims. The trial court may determine the appropriate amount of fees and costs, upon a proper application by defendants. (See *Coltrain, supra,* 66 Cal.App.4th 94, 108.)

For the guidance of the trial court, we note in closing that, as the parties seeking fees and costs, defendants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." (*Hensley, supra,* 461 U.S. at p. 437 [103 S.Ct. at p. 1941].) To that end, the court may require defendants to produce records sufficient to provide " 'a proper basis for determining how much time was spent on particular claims.' " (*Id.,* at p. 437, fn. 12 [103 S.Ct. at p. 1941].) The court also may properly reduce compensation on account of any failure to maintain appropriate time records. (*Id.,* at p. 438, fn. 13 [103 S.Ct. at p. 1942].)

## III

### DISPOSITION

The order denying the motion to strike is affirmed with respect to the first, second, third, and fifth causes of action and reversed as to the remaining

causes of action. Upon an appropriate motion and factual showing, defendants may recover attorney fees and costs in connection with their SLAPP motion and on appeal, under section 425.16, subdivision (c), in an amount to be determined by the trial court.

Ramirez, P. J., and Hollenhorst, J., concurred.