Filed 6/28/23  Zochlinski v. Blum CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| HOWARD ZOCHLINSKI, | C091878 |
| Plaintiff and Appellant, | (Super. Ct. No. CVCV-19-315) |
| v. | |
| JUDY BLUM et al., | |
| Defendants and Respondents. | |

Plaintiff Howard Zochlinski and defendant Judy Blum were neighbors in Davis. In 2017, the house plaintiff was occupying as a renter was placed in receivership and he was forced to move out.  Plaintiff, in propria persona, filed a complaint against Blum, defendant Scott Ragsdale, Blum's son, and others, seeking to recover damages for, among other things, libel, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of his federal and state civil rights.  The complaint focused on Blum's alleged decades-long campaign, motivated by alleged anti-Semitism, to force plaintiff out of the neighborhood by making code

1

enforcement complaints against him, circulating a petition, and sending an e-mail to the receiver's representative claiming plaintiff had been seen trespassing on Blum's property and that police had been notified.

Blum and Ragsdale (hereinafter, collectively, defendants) filed a special motion to strike the complaint insofar as asserted against them pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] Plaintiff opposed the motion and filed exhibits, to which defendants filed evidentiary objections. After oral argument in the trial court, the court sustained defendants' objections, granted their special motion to strike the complaint, and awarded them attorney fees under section 425.16, subdivision (c).

On appeal, plaintiff contends (1) he asserts causes of action other than those based on slander and libel, including civil rights claims, seeming to imply section 425.16 does not apply to these other causes of action, and specifically asserting that section 425.16 does not apply to federal civil rights claims, (2) Blum's e-mail to the receiver's representative was not protected activity, (3) the trial court erred in not permitting him to present additional evidence and cure any defects in that evidence, and (4) whether he prevails on this appeal or not, he should not have to pay attorney fees under section 425.16, subdivision (c).

We affirm.

### BACKGROUND

*The Complaint*

Plaintiff, in propria persona, commenced this action against Blum and Ragsdale, among others, by filing a complaint seeking to recover damages for, among other things,

---

[1] "Anti-SLAPP" refers to the procedural vehicle provided by Code of Civil Procedure section 425.16 to strike legal actions intended as a " 'strategic lawsuit against public participation.' " (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1 (*Navellier*).) Undesignated statutory references are to the Code of Civil Procedure.

libel, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of plaintiff's federal and state civil rights. The complaint did not set forth discrete causes of action, but rather advanced a number of claims throughout.

The action was centered on plaintiff's allegations concerning Blum, whom plaintiff claimed to be a "vicious anti-Semite." Blum's actions, as asserted by plaintiff, consisted of reporting plaintiff for code violations while ignoring the violations of others: "Blum has made it her mission in life to harass and slander [plaintiff] since he moved into the neighborhood in 1984, supported in these efforts by the other defendants. It was not until his falling out with the University of California in 1992 that the City of Davis . . . acted on her pathological psychopathic racial[] and personal animus. From that time on the City harassed [plaintiff], using any excuse to persecute [him] – and nearly all the excuses were provided in complaints made by Blum. Many of these were false; all were biased in that she ignored similar and even worse violations . . . by other residents of [their street] and surrounding streets, including friends living closer to her home. . . . Such use of the abatement code by Blum and the City for precisely this purpose – i.e., to force ethnic/racial/religious minority 'undesirables' from their homes and from the city – has been declared unconstitutional . . . ."

In addition to alleging Blum complained of plaintiff's code violations while not complaining of worse violations by others, plaintiff alleged Blum "petition[ed] others in the neighborhood to force [plaintiff] out . . . ." In what plaintiff denominated an exhibit to his complaint, entitled "History of Defendants' Actions 1984-2017 – Evidence of Racism, Bias, Malice and Madness" (some capitalization omitted), plaintiff asserted Blum "circulat[ed] a petition to have [plaintiff] removed from the neighborhood," and that a codefendant "was recruited by Blum to get signatures on the anti-[plaintiff] petition."

3

In 2017, the City of Davis (City) filed a petition for the appointment of a receiver for the house where plaintiff lived as a tenant. Following a hearing on November 28, 2017, the court granted the City's petition for the appointment of a receiver. Plaintiff ultimately was forced from the home. Plaintiff alleged Blum was instrumental in the receivership, alleging she "had been using her influence with the City to not merely advocate but to exhort and likely extort the City's authorities into forcing [plaintiff] from his home." Plaintiff later alleged the court in the receivership proceeding was "swayed by Blum's false and defamatory statements and the misrepresentations the Receiver made based on them," to plaintiff's detriment.

Plaintiff emphasized an e-mail Blum allegedly wrote to the receiver's representative in which she stated plaintiff had been reported to police for trespassing and in which she expressed fear of plaintiff as mentally unstable. According to plaintiff, these statements were false. Plaintiff alleged numerous injuries as a proximate result of the e-mail.

The e-mail was attached as an exhibit to plaintiff's complaint. The portion of the e-mail written by Blum to the receiver's representative stated, in pertinent part: "You have suggested I contact you if [plaintiff] is around. It was reported to me he was on my property . . . on Tuesday where he was seen by a neighbor's girl friend and reported to the police. That is not something that I ever have had a problem with before. [¶] Though my car was there I was not aware of his presence. [¶] My next door neighbor also said he was up a 5 [*sic*] and [plaintiff] was on the street. I am assuming he is not free to trespass, but there are no laws prohibiting his riding on the street. I did notice what appears to be lights on at [plaintiff's former property] when I came from the area on F Street at night last week, but I can't be certain they were from [that address]. [¶] Obviously, I am still uneasy about [plaintiff's] intent. It certainly is intimidating to know he was on my property."

4

Plaintiff alleged Blum's actions over the prior 33-year period violated his civil rights. Plaintiff asserted: "Blum, because she is a narcissistic psychopath driven by racial-animus and personal hatred, rather than speak with [plaintiff] directly and deal with any issues on a personal basis, continually acted through local authorities, with whom she had influence."

Later in the complaint, plaintiff alleged: "Numerous times over the 33 years . . . Blum repeatedly did what she could to curtail [plaintiff's] lease rights: Contacting . . . [plaintiff's] landlord to demand his eviction; harassment through complaints about . . . the condition of his property; having Ragsdale, her son, vandalize his property, etc. all these efforts culminated with his eviction,[] forced by the police, and even this wasn't enough as she made a false claim of [plaintiff] trespassing onto her property in an effort to prevent [plaintiff] from returning to the neighborhood."

Additionally, plaintiff alleged Blum interfered with his property rights through her efforts to have the City tow his car.

Plaintiff asserted Ragsdale had trespassed on plaintiff's property, threatened neighbors, assaulted plaintiff, slashed his tires, and committed other acts of vandalism. Specifically, in his exhibit A to his complaint, plaintiff claimed that, at a 2013 event, Ragsdale harangued plaintiff, struck him from behind, and pushed him on the chest.

*Defendants Special Motion to Strike*

Pursuant to section 425.16, defendants filed a special motion to strike the complaint insofar as asserted against them. They summarized plaintiff's factual allegations, including that they regularly complained to the City about the condition of his property and vehicles; Blum started a petition regarding the state of plaintiff's property; and Blum made allegedly defamatory statements about plaintiff when she reported someone told her plaintiff had trespassed on her property.

Blum acknowledged writing a letter to code enforcement about "potential soil contamination and toxic waste due to the items that were clearly visible on the Plaintiff's

5

property and were spilling over onto the public sidewalk." Blum also acknowledged writing to neighbors to tell them they could contact the police about plaintiff's property. Additionally, Blum acknowledged a neighbor had told her plaintiff had been seen trespassing on her property in or around February 2018, after plaintiff's home had been placed in receivership. According to Blum, the neighbor stated his girlfriend had called the police, but Blum did not know whether a report had been filed.

Defendants asserted the conduct plaintiff alleged as to Blum was protected activity under section 425.16. According to defendants, the statements plaintiff alleged they made "were in the form of complaints made to local law enforcement for plaintiff's violations of city codes and ordinances as well as a petition that plaintiff alleges was started by" Blum. According to defendants, these were all forms of protected speech. Specifically, defendants asserted Blum's communications with the receivership and with local law enforcement were protected under section 425.16, subdivision (e)(1). As for the petition regarding plaintiff's property, defendants asserted it was protected speech as a public issue or issue of public interest under section 425.16, subdivision (e)(4).

Defendants further asserted plaintiff could not establish a probability of prevailing on his claims.

Defendants requested attorney fees under section 425.16, subdivision (c).

In a declaration Blum concluded: "All actions I have taken, and words I have spoken, in connection with the allegations under the complaint arose out of my concern regarding the hazardous state of Plaintiff's property. I believed, and continue to believe, these matters were of public interest in the neighborhood."

Defendants' attorney's declaration set forth the hours he spent preparing the special motion to strike plus fees resulting in a total expenditure of $3,207.50.

*Plaintiff's Opposition*

In his opposition to defendants' special motion to strike, plaintiff asserted the "acts complained of herein is [plaintiff's] loss of personal property, emotional distress, and

6

other violations under civil rights laws – Defendants['] motives, objectives and results are the Cause of Action and Claims, not merely the email and sham complaints and petitioning, which are the evidence."

Plaintiff asserted Blum's e-mail to the receiver's representative was not privileged under Civil Code section 47, subdivision (b), as Blum was not a witness at trial, the communication was not made to a court, and the issues in the statement were not relevant to issues before a court. Plaintiff further asserted the e-mail, at most, was subject to qualified immunity, and that there was "an abundance of evidence of malice to overcome this privilege."

Plaintiff asserted section 425.16 is not applicable to federal or California civil rights statutes.

According to plaintiff, defendants were not complaining about any matter of public interest. Rather, they were pursuing a private interest, "racial cleansing of the neighborhood," in service to which Blum "through repeated sham complaints under color of law, attempted and failed to make into a 'matter of public interest.' "

Plaintiff made numerous factual representations in asserting he could demonstrate a probability of prevailing on the merits of his claims.

*Tentative Ruling*

In its tentative ruling, the trial court granted defendants' special motion to strike. The court concluded defendants had established plaintiff's complaint arose out of protected activity, and further that plaintiff failed to show a probability of prevailing on the merits. The court further specified plaintiff's federal causes of action were subject to the special motion to strike. The trial court awarded defendants attorney fees and costs in the amount of $3,207.50.

*Oral Argument Before the Trial Court*

At oral argument before the trial court, plaintiff asserted his claims should not be stricken because they supported a distinct claim on which he demonstrated a probability

7

of prevailing on the merits, specifically his civil rights claims. Plaintiff asserted the supremacy clause "should be determinative." He further asserted what should be determinative was the ultimate effect and objective in the matter, "not whether or not letters and complaints were what you call it, privileged." He asserted the e-mail at issue was not subject to any litigation privilege.

Defendants argued the speech at issue was protected activity under section 425.16. Defendants emphasized the "letter that he attached to his Complaint, the e-mail, and the claimed Petition, he had violations of abatement codes on his property as he has stated himself."

*The Trial Court's Order*

In an order after oral argument, the trial court adopted the tentative ruling, with modifications, granting defendants' special motion to strike and awarding them attorney fees in the amount of $3,207.50.

DISCUSSION

I

*Self-represented Litigants, Appellate Procedure, and the Appellant's Burden*

As a self-represented litigant, defendant "is entitled to the same but no greater consideration than other litigants." (*County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 861 (*County of Sacramento*).) "Accordingly, he must follow the rules of appellate procedure." (*Ibid*.) "Those rules require an appellate brief to support each point by argument and, if possible, by citation to authority and to provide a citation to the record for a factual assertion." (*Ibid*., citing Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) " '[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]. We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' " (*County of Sacramento,* at p. 861.)

8

"Further, we may treat a point that is not supported by cogent legal argument as forfeited." (*Ibid.*)

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court of Los Angeles* (1970) 2 Cal.3d 557, 564.) "It is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 (*Del Real*).)

II

*Anti-SLAPP Special Motions to Strike and Standard of Review*

California's anti-SLAPP statute, section 425.16, provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

As the California Supreme Court has instructed: " 'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of

9

law.  [Citation.]  "[C]laims with the requisite minimal merit may proceed." '  [Citation.]

. . . As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the

claim 'may not rely solely on its complaint, even if verified; instead, its proof must be

made upon competent admissible evidence.' "  (*Sweetwater Union High School Dist. v.*

*Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)  "The grant or denial of an anti-SLAPP

motion is reviewed de novo." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781,

788.)

As used in section 425.16, " 'act in furtherance of a person's right of petition or

free speech under the United States or California Constitution in connection with a public

issue' includes:  (1) any written or oral statement or writing made before a legislative,

executive, or judicial proceeding, or any other official proceeding authorized by law,

(2) any written or oral statement or writing made in connection with an issue under

consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law, (3) any written or oral statement or writing made in a place

open to the public or a public forum in connection with an issue of public interest, or

(4) any other conduct in furtherance of the exercise of the constitutional right of petition

or the constitutional right of free speech in connection with a public issue or an issue of

public interest."  (§ 425.16, subd. (e).)

III

*Applicability of Section 425.16 to Civil Rights Causes of Action*

Before we turn to the application of the two-step analysis, plaintiff asserts section

425.16 cannot be used to strike federal civil rights causes of action.  He asserts that the

supremacy clause of the United States Constitution prevails over section 425.16.  He also

asserts section 425.16 does not apply to state civil rights causes of action.

Those California courts that have considered whether section 425.16 applies to

federal civil rights claims have concluded that it does.  (*Patel v. Chavez* (2020)

48 Cal.App.5th 484, 488 ["section 1983 does not preempt application of the anti-SLAPP

statute to section 1983 claims in state court"]; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1392, fn. 4 ["Federal civil rights claims brought in California state courts are subject to section 425.16 motions."]; *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1117-1118 [rejecting claim "that section 425.16 does not apply to the civil rights cause of action because it violates federal substantive law"]; see *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1056 [citing *Vergos* and *Bradbury* and for the proposition that § 425.16 applies to federal claims under 42 U.S.C. § 1983]; see also *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 710 [applying § 425.16 to 42 U.S.C. § 1983 claims].)

Plaintiff has neither addressed these cases in his briefing nor offered any persuasive reason why we should depart from their conclusions here. Based on this well established case law, we conclude the fact that plaintiff asserts federal civil rights causes of action pursuant to, among other sections, 42 U.S.C. section 1983, does not bar application of section 425.16 to any or all of plaintiff's complaint.

Plaintiff also asserts section 425.16 does not apply to civil rights causes of action under California law. For this premise, he cites *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563. However, that court did not pronounce that section 425.16 was inapplicable to state civil rights causes of action. Rather, it concluded that a particular cause of action asserted pursuant to Civil Code section 51.7 based on allegations the defendant committed violence and made threats of violence did not arise from protected activity and therefore was "not encompassed by the anti-SLAPP statute." (*Siam,* at p. 1570.) *Siam* does not stand for the proposition that all state civil rights causes of action are, in effect, immune from anti-SLAPP special motions to strike.

Nothing in section 425.16 "categorically excludes any particular type of action from its operation . . . ." (*Navellier, supra*, 29 Cal.4th at p. 92.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability — and whether that

11

activity constitutes protected speech or petitioning.  Evidently, '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit — to interfere with and burden the defendant's exercise of his or her rights." '  [Citation.] 'Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights.' " (*Id*. at pp. 92-93.)  Plaintiff has not established section 425.16 does not apply to his state civil rights causes of action as a general matter.  (See, e.g., *Doe v. State of California* (2017) 8 Cal.App.5th 832, 842-843 [affirming granting of § 425.16 special motion to strike including as to Civ. Code, § 52.1 cause of action].)

IV

*The Granting of Defendants' Special Motion to Strike*

Plaintiff asserts this case is not merely one sounding in slander and libel, but also asserts civil rights claims spanning more than 30 years.  According to plaintiff, only his claim related to the e-mail sounded in slander and libel, and all other actions involved civil rights violations.  As near as we can discern, plaintiff asserts the specific instances of, for example, code complaints were evidence of liability for civil rights violations rather than the actual wrong complained of, and seems to imply that, because he asserts causes of action for civil rights violations rather than, for example, defamation, section 425.16 does not apply.

Defendants respond that all of their alleged oral and written statements were made in connection with their protected right of reporting code violations to law enforcement, and thus the subject of plaintiff's action was protected speech.  Defendants maintain all of the speech at issue was protected activity under section 425.16, subdivision (e)(1) and (4).  Defendants further assert plaintiff cannot demonstrate a probability of prevailing on the merits of his claims.

We conclude the acts that are the subject of plaintiff's claims arose from protected activity. We further conclude plaintiff has not demonstrated a probability of prevailing on the merits of those claims.

A.      *Step One — Protected Activity*

Plaintiff's complaint focuses on Blum's actions in communicating with law enforcement and/or municipal code enforcement about plaintiff's property, including the vehicles on the property, circulating a petition, and communicating with the receiver's representative. We find these actions arise from protected activity.

"The law is that communications to the police are within SLAPP." (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941; see § 425.16, subd. (e)(1) [covering statements or writings before an "executive" proceeding].) Thus, plaintiff's allegations concerning Blum contacting law enforcement about him or his property address protected activity.

Similarly, communications with municipal code enforcement with complaints about plaintiff's property, and seeking to have those agencies initiate corrective action, is also protected activity under section 425.16. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009 (*ComputerXpress*) [filing a complaint with a government agency constitutes a "statement before an official proceeding" within the meaning of § 425.16, subd. (e); " ' "communication to an official administrative agency . . . designed to prompt action by that agency" ' is ' "as much a part of the 'official proceeding' as a communication made after the proceedings had commenced" ' "]; accord, *Lee v. Fick* (2005) 135 Cal.App.4th 89, 97 [complaint to the government is itself "part of the official proceedings"].) Thus, all of plaintiff's allegations concerning Blum contacting code enforcement with complaints about his property address protected activity.

Communications with the receiver's representative were also protected activity as statements before a judicial proceeding. (See *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1167-1168 [statements to the court-appointed liquidator in pending liquidation proceeding were made in connection with an issue under

13

consideration by a court in a judicial proceeding under § 425.16, subd. (e)(2)]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671 [communications opposing Securities and Exchange Commission's efforts to appoint a receiver necessarily involved written or oral statements made before a judicial proceeding within the meaning of § 425.16, subd. (e)(1)].) Thus, plaintiff's communications with the receiver's representative here, and specifically the e-mail she sent reporting that a neighbor's girlfriend had seen plaintiff on her property and reported the sighting to the police addressed protected activity.

Lastly, plaintiff's allegation that Blum circulated a petition seeking defendant's ouster from the neighborhood also constituted protected activity. Specifically, this would be "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) "Protection under section 425.16 for statements in connection with a public issue or an issue of public interest is not dependent on those statements having been made in a public forum. Rather, subdivision (e)(4) of section 425.16 applies to private communications concerning issues of public interest." (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736.) Addressing a public issue of nuisance and safety, this constituted protected activity. (See *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1420 [in addition to being made in connection with an issue under consideration or review by a judicial body, a letter to condominium association was also protected activity under § 425.16, subd. (e)(4) as it addressed conduct "that arguably involved public issues of nuisance and safety"].)

In his appellate brief, plaintiff asserts he has pleaded that Blum "and the other defendants, through their actions, sought to deprive [plaintiff] of his rights under both Federal and State law: property, privacy, due process, etc. and not merely loss of reputation." He asserts he seeks to recover for more than 30 years of civil rights violations. However, the specific allegations of conduct in the complaint raised by the

14

plaintiff all relate to Blum's communications to law enforcement and/or code enforcement, the receiver's representative, and circulating a petition. As defendants correctly assert, the crux of plaintiff's complaint is that their communications to law enforcement, code enforcement, and to the receiver's representative were libelous, slanderous, defamatory, violated his civil rights, and ultimately caused him to lose his home as well as personal property. In other words, these actions constitute "the defendant[s'] *activity* that gives rise to [their] asserted liability . . . ." (*Navellier, supra*, 29 Cal.4th at p. 92.) As we have concluded, these communications constituted protected activity.

Plaintiff emphasizes California Supreme Court case law stating that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. *Rather, a claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.*" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060, italics added.) Plaintiff claims that the communications we have discussed are not protected activity and, further, are "the last known acts in [Blum's] long standing and continuing campaign of civil rights violations aimed at forcing [plaintiff] from his home and depriving him of property."

The fact remains, however, that these actions and communications we have discussed represent the specific factual allegations in plaintiff's complaint and we have determined that the alleged acts constituted protected activity. That plaintiff claims these are merely examples or indicators of defendants' ongoing course of conduct that caused him harm does not remove the allegations from the scope of protected activity. Moreover, plaintiff fails to identify any other actionable conduct and demonstrate that it did not constitute protected activity.

15

Accordingly, we proceed to the second step of the analysis to determine whether, in opposition, plaintiff established a probability of prevailing on the merits.

B.     *Step Two – Plaintiff's Probability of Prevailing on the Merits*

1.  *Civil Code Section 47 Privilege*

In the trial court, addressing plaintiff's probability of prevailing on the merits, defendants asserted, among other things, that "a variety of defenses and privileges" would preclude a finding in plaintiff's favor on the merits.  The nature of plaintiff's claims, focused on Blum's actions in reporting him for code violations, her communication with the receiver's representative, and petitioning others in the neighborhood, implicate Civil Code section 47 privilege.  As he did in his opposition to the special motion to strike and at oral argument before the trial court, plaintiff asserts Civil Code section 47 privilege does not apply.

"A privileged publication or broadcast," with specified statutory exceptions, is one made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ."  (Civ. Code, § 47, subd. (b).) The privilege in Civil Code section 47, subdivision (b) is " 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' "  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322.)

Reports to law enforcement about suspected criminal activity are considered privileged pre-litigation communications under Civil Code section 47, subdivision (b). (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 364 (*Hagberg*).)  Similarly, complaints to a governmental agency are absolutely privileged by Civil Code section 47, subdivision (b), which "protects ' "communication to an official administrative agency . . . designed to prompt action by that agency . . . ." ' "  (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1015; accord, *Hagberg*, at pp. 360-361 [reports to " ' "*public*

16

*authorities whose responsibility is to investigate and remedy wrongdoing*" ' " are subject to privilege in Civ. Code, § 47, subd. (b)]; *Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753 ["communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced"].) Thus, plaintiff's claims concerning Blum's alleged complaints about plaintiff's code violations were absolutely privileged as complaints to a governmental agency seeking to prompt action by that agency.

Plaintiff's claims concerning communications Blum made in connection with the receivership were also privileged. Civil Code section 47, subdivision (b) privileges a publication or broadcast made in any judicial proceeding. "The privilege applies even where made outside the courtroom and no function of the court or its officers is involved." (*Cayley v. Nunn* (1987) 190 Cal.App.3d 300, 304 (*Cayley*).)

Plaintiff also raised Blum's alleged circulation of a petition aimed at having plaintiff removed from the neighborhood. In *Cayley, supra*, 190 Cal.App.3d 300, the plaintiffs asserted certain remarks the defendants made while they were circulating a petition in support of their proposed variance constituted slander. (*Id*. at p. 302.) Specifically, one of the defendants allegedly stated, "that the telephone people came to the [plaintiffs'] house and found [the defendant's] telephone line in the [plaintiff's] house and that the [plaintiffs] had connected illegal wires to a listening device, and that is how they tapped his phone." (*Ibid*.) The plaintiffs sued the defendants for denial of their constitutional rights and slander. (*Ibid*.) The trial court granted the defendants summary judgment on the ground that the comments were absolutely privileged under Civil Code section 47. (*Cayley*, at p. 302.) The Court of Appeal affirmed. (*Id*. at p. 307.) The court stated: "the question before the court is whether the absolute privilege of Civil Code section 47 . . . applies to the above alleged slanderous remarks made by defendants to

17

potential petition signers, where the remarks were made while defendants were circulating a petition to be given to the City Council, and where the purpose of the petition was to support defendants' request for a height variance." (*Id*. at p. 303.) The court first determined the Civil Code section 47 privilege applied to local city council proceedings. (*Cayley,* at p. 303.) Next, the court stated that communications made prior to the legal action itself were privileged if they had "some logical connection to the suit and are made to achieve the objects of the litigation." (*Id.* at pp. 303-304.) The Court of Appeal concluded that "the alleged slanderous statements were made during preliminary conversations while defendants were marshalling evidence and preparing for their presentation at the city council meeting. Therefore, defendants' statements cannot be considered irrelevant to the proceedings and they were directed toward the achievement of the objects of the proceeding." (*Id*. at p. 304.) Addressing whether the statements were sufficiently connected to the privileged proceeding, the court concluded: "by plaintiffs' own admission in their complaint, the . . . statements on wiretapping were made to 'encourage the neighbors to sign the [defendants'] petition' and to 'attempt to influence the outcome of the city council vote.' Therefore, plaintiffs themselves have alleged the relation and connection between the alleged slander and the privileged judicial or legislative proceeding. Since there was a logical connection or relatedness between defendants' remarks and the city council proceedings, and the remarks were made while marshalling support of their position, defendants' remarks had the benefit of the absolute privilege of Civil Code section 47 . . . , and the summary judgment is affirmed." (*Id*. at p. 306.)

Plaintiff has not identified any particular statements in the petition he alleges Blum circulated. His allegations on this claim are sparse at best and lacking in any detail. He alleges Blum "petition[ed] others in the neighborhood to force [him] out . . . ." He alleges a third party had participated in Blum's efforts to force him from the neighborhood and "had gone around with the petition against [him] and encouraged

18

neighbors to sign it." He asserts unidentified individuals "signed the petition aimed at forcing [him] from the neighborhood that he had been informed was circulated by Blum." In the second-to-last paragraph of his complaint, plaintiff states certain unidentified defendants engaged in a conspiracy with Blum, as "a proximate result of . . . which Blum was able to create a petition to present to City of Davis authorities which led to the forcing of [plaintiff] from his home . . . ." He advanced similar allegations in his exhibit to the complaint. Otherwise, plaintiff offers no detail concerning the substance of the petition. In any event, because the alleged petition, "which led to the forcing of" plaintiff from his home, necessarily related to Blum's alleged efforts to instigate or further the receivership, which was in fact what forced him from his home, Blum's communications would be privileged under Civil Code section 47, subdivision (b) as being made in a judicial proceeding. Under the reasoning of *Cayley*, statements Blum made in circulating the petition, if any, would also be privileged to the extent they related to promoting the petition, although, again, plaintiff does not identify or allege any such statements. We note also that, if such a petition was intended to be presented to plaintiff's landlord, his landlord did not evict him, but instead he was evicted pursuant to the receivership; thus, the plaintiff has not alleged any harm resulting from the petition under these particular circumstances.

Because Blum's communications of which plaintiff complains are absolutely privileged under Civil Code section 47, plaintiff cannot establish a probability of prevailing on the merits of his claims based on them. Thus, insofar as he asserts them, plaintiff failed to meet his burden in opposition to defendants' special motion to strike to establish his probability of prevailing on the merits of his causes of action for, among other things, libel and defamation. (See *Flatley v. Mauro, supra*, 39 Cal.4th at p. 322 ["the privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution' "].)

19

### 2. *Civil Rights Claims*

Recasting his allegations as civil rights violations does not save the plaintiff's complaint. In *Tichinin v. City of Morgan Hill, supra*, 177 Cal.App.4th 1049, the court found it unnecessary to reach the issue of whether Civil Code section 47 "immunizes conduct from liability for a civil rights violation under the federal statute." (*Tichinin,* at p. 1084, fn. 16.) Similarly, in *Hagberg, supra*, 32 Cal.4th 350, the Supreme Court found it unnecessary "to resolve the broad legal question whether proof that a business establishment has called for police assistance (or has a policy of calling for police assistance) based on racial or ethnic prejudice could give rise to liability under the Unruh Civil Rights Act notwithstanding the provisions of section 47 [subdivision ] (b)." (*Id*. at p. 376.) To the extent these cases give rise to doubts as to whether the absolute privilege of Civil Code section 47, subdivision (b) applies to federal and state civil rights causes of action such as those plaintiff purports to assert here, we conclude plaintiff nonetheless failed to meet his burden of establishing a probability of prevailing on the merits of those claims.

To prove a violation of a plaintiff's federal civil rights generally, the plaintiff must prove (1) the defendant committed an act, (2) the defendant was acting or purporting to act in the performance of official duties, (3) the defendant's conduct violated the plaintiff's right, (4) the plaintiff was harmed, and (5) the defendant's wrongful act was a substantial factor in causing the plaintiff's harm. (CACI No. 3000.) Plaintiff also purported to assert state civil rights claims under Civil Code sections 51.7, 52, 52.1, 54, and 54.3 based on the same actions. (See CACI Nos. 3060, 3063, 3064, 3066, 3070)

As best we can determine, plaintiff's civil rights claims appear to be based on the fact that he was displaced by defendants' conduct, motivated by Blum's alleged anti-Semitism, and affected by defendants acts discussed herein, and, as a result, plaintiff lost his home as well as personal property. He also asserts that, by "being forced to seek housing and nearly ending up homeless," he suffered mental and emotional distress.

20

However, it is undisputed that the house he lived in was placed in receivership and that he was evicted as a result through this proceeding. In short, because defendants did not cause plaintiff to lose his housing, they did not cause the damages he claims—losing his home and personal property and the resulting distress.

In any event, with regard to the evidence plaintiff submitted to substantiate his claims, with his complaint, plaintiff submitted his exhibit A, denominated "History of Defendants' Actions 1984-2017 – Evidence of Racism, Bias, Malice and Madness." (Some capitalization omitted.) This was, in essence, an expansion on factual allegations plaintiff asserted in his complaint consisting only of plaintiff's verified representations and allegations. He also submitted a copy of the e-mail exchange between Blum and the receiver's representative. In that e-mail, of relevance, Blum reported to the receiver's representative that a neighbor's girlfriend saw defendant on Blum's property and reported that to the police. Plaintiff has not offered a cogent argument on appeal as to how this e-mail could give rise to a deprivation of his civil rights. (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861 ["We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory."].)

With his opposition to defendant's special motion to strike, plaintiff submitted 11 exhibits. This evidence consisted of a letter from a neighbor discussing his favorable opinion of plaintiff, essentially a character reference letter for plaintiff (exhibit A); a Sacramento News & Review article discussing plaintiff that appears to have been published in 2001 (exhibit B); a Davis Enterprise article published in 1998 discussing numerous code enforcement complaints in plaintiff's neighborhood by various residents which discussed four named residents, including plaintiff, but which did not name defendants (exhibit C); a 1999 letter from plaintiff to the Hearing Examiner and City Manager requesting a continuance of his hearing and responding to correspondence (exhibit D); a handwritten note plaintiff claims to be from Ragsdale, which stated only: "Howard [¶] My apology for my part in our little flair [*sic*] up. My mom set me

21

straight. [¶] Bygones [¶] Judith's son [¶] Scott." (exhibit E); two letters to the editor of the Davis Enterprise written by Ragsdale discussing, in one instance, the United States Women's National Soccer Team and, in the other, "what was objectionable about shouting down the Sacramento Synagogue Cantor at the protest against ICE separating families at the border" (exhibit F); photographs purportedly showing code violations of a nonparty neighbor of plaintiff,[2] presumably to demonstrate Blum did not complain of violations similar to plaintiff's because she was using code enforcement as a pretext to target plaintiff (exhibit G); photographs of bushes at plaintiff's house, purportedly showing they were "vandalized to expose items that had been concealed behind them in accord with police inspection" (exhibit H); two character reference letters on behalf of plaintiff that he submitted as he fought receivership and eviction (exhibit I); a printout of items of personal property plaintiff apparently posted online for sale (exhibit J); and a photograph purportedly showing plaintiff's property as of 2014 (exhibit K).

The trial court sustained defendants' objections to all of plaintiff's exhibits and did not consider them in deciding the special motion to strike. This ruling and whether plaintiff should have been afforded the opportunity to cure the inadmissibility of the evidence is the subject of another of plaintiff's claims of error, discussed in part VI, *post*. However, even if we were to consider all of the evidence plaintiff offered, we conclude he failed to establish his probability of prevailing on the merits of his civil rights claims. Putting aside issues of admissibility, having reviewed this evidence, summarized *ante*, we conclude it was largely irrelevant to plaintiff's claims. (See Evid. Code, § 210.) To the extent it was relevant, it was only relevant to prove there were other code violations in

---

**2**    Included among the exhibits is a printout of a Code Enforcement Request for Investigation addressing an alleged code violation at the nonparty neighbor's address seemingly submitted by plaintiff. This item does not appear on the summary of plaintiff's exhibits.

the neighborhood and that Ragsdale apparently apologized for his role in a flare up with plaintiff. Plaintiff has failed to offer a cogent argument as to how this evidence, even if it was considered, established his probability of prevailing on the merits of his claims. (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

3. *Ragsdale's Actions*

While Ragsdale's alleged action in assaulting plaintiff in 2013 would not constitute protected activity under section 425.16, we note here plaintiff has not raised any substantive argument on appeal about that particular allegation, or about the allegations concerning trespass or vandalism, with citation to the record and supported by authority. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) As stated, "[i]t is the appellant's burden to demonstrate the existence of reversible error." (*Del Real, supra*, 95 Cal.App.4th at p. 766.)

4. *Conspiracy*

" ' "A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve." ' [Citation.] Therefore, 'conspiracy to commit a tort is not a separate cause of action from the tort itself . . . .' " (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1015.) Inasmuch as plaintiff has not established a probability of prevailing on the merits of his underlying claims, he cannot establish a probability of prevailing on a theory of conspiracy.

5. *Conclusion*

In conclusion, the trial court's order " 'is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court of Los Angeles, supra*, 2 Cal.3d at p. 564.) As to all causes of action we can detect in plaintiff's complaint, plaintiff has failed to meet his burden of proving that the trial court committed reversible error in concluding he failed to demonstrate the probability of prevailing on the merits of

23

his claims. (See *Del Real, supra*, 95 Cal.App.4th at p. 766 [appellant's burden to establish reversible error].)

V

*Evidentiary Rulings*

With his opposition to defendants' special motion to strike, plaintiff submitted 11 exhibits, discussed *ante*. Defendants filed evidentiary objections to plaintiff's evidence. In its tentative ruling, the trial court sustained defendants' objections. Ultimately, the trial court adopted its tentative ruling, with modifications we need not detail here, sustaining defendants' objections.

Plaintiff asserts the trial court erred in refusing to allow him to present evidence and proceed with discovery. He asserts he should have been afforded the opportunity to overcome defendants' evidentiary objections.

We have concluded *ante* that, even taking all of plaintiff's proffered evidence into consideration, plaintiff failed to establish a probability of prevailing on the merits of his claims. As such, regardless of the merits of plaintiff's contention that the trial court erred in failing to afford him the opportunity to cure the impediments to the admissibility of his evidence (see generally *Sweetwater Union High School Dist. v. Gilbane Building Co., supra*, 6 Cal.5th at p. 949; *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1145-1149), plaintiff cannot establish he was prejudiced as a result of the trial court's ruling. An appellant has the burden not only to show error but prejudice from that error. (Cal. Const., art. VI, § 13.) Because plaintiff cannot demonstrate he was prejudiced as a result of the trial court's evidentiary rulings, he cannot carry his burden of establishing reversible error. (See *Del Real, supra*, 95 Cal.App.4th at p. 766 [appellant has the burden to demonstrate reversible error].)

To the extent plaintiff asserts the trial court erred in failing to rule on evidentiary objections, or that the trial court relied on *Gallant v. Carson* (2005) 128 Cal.App.4th 705, disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7,

for the premise that it need not rule on evidentiary objections, these contentions are without merit and belied by the record. The trial court did rule on defendants' evidentiary objections, sustaining them all, and did not rely on *Gallant* for the premise that it need not rule on evidentiary objections.

## VI

### *Attorney Fees*

Plaintiff asserts that, assuming we decide the appeal in his favor, the order awarding defendants attorney fees should be reversed. On the other hand, should defendants prevail, he requests, in effect, that we vacate the award of attorney fees.

Defendants counter that plaintiff is required to pay attorney fees under section 425.16, subdivision (c). Therefore, defendants assert the trial court properly awarded attorney fees.

With exceptions not relevant here, section 425.16, subdivision (c) provides, in pertinent part: "in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." (§ 425.16, subd. (c)(1).) "Thus, under . . . section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.)

Plaintiff has offered no argument or authority in support of his assertion that he should not have to pay attorney fees. As such, plaintiff has not established the trial court committed reversible error in awarding mandatory attorney fees to defendants under section 425.16, subdivision (c). (*Del Real, supra*, 95 Cal.App.4th at p. 766.)

DISPOSITION[3]

The order granting defendants' special motion to strike is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____\s_____,
McADAM. J.[*]


We concur:


_____\s_____,
DUARTE, Acting P. J.


_____\s_____,
BOULWARE EURIE, J.

---

**3**     To the extent plaintiff moves for judicial notice of a declaration submitted in a Yolo County Superior Court No. PT-17-1327, we deny the request " 'because the proffered material is unnecessary to our decision.' " (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 594, fn. 13, quoting *City of Emeryville v. Cohen* (2015) 233 Cal.App.4th 293, 312, fn. 13.)

*     Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.